## GRAHAM v. JOHNSON et al.

No. 6868.   Decided February 18, 1946.   (166 P. 2d 230.)

See 5 C. J. S., Appeal and Error, sec. 1559; 5 Am. Jur., 613.

*John D. Rice, Willard Hanson,* and *Stewart M. Hanson,* all of Salt Lake City, for appellant.

*Jesse R. S. Budge* and *Edwin B. Cannon,* both of Salt Lake City, for respondents.

WOLFE, Justice.

Appeal from a judgment directing a verdict in favor of the defendants in an action for damages due to the alleged negligence of the respondent minor in driving her father's car in such a manner as to injure the appellant minor. When the evidence of both sides had been presented, the

court, upon motion of defendants, directed a verdict for them. A subsequent motion for a new trial was denied. The plaintiff appealed. Assigned as error are the court's action in directing a verdict, in denying the motion for a new trial. and in sustaining objections to questions asked the respondent on cross examination.

The facts in reference to which we find no material conflict are as follows: The accident occurred in the late afternoon of September 22, 1944, on Lake Street in Salt Lake City. The street runs north and south. It is 30 feet wide from curb to curb. A construction joint of black bituminous material in the concrete pavement delineates the center of the street. On this street, just south of Yale Avenue, plaintiff, Gary Graham, age 13, with two other boys, Donald Hendrickson, age 14, and Jack Ware, age 12, were playing football. While the game was in progress, Darlene Johnson, age 16, was washing her father's car in the driveway of her home, located on the east side of Lake Street and south of where the boys were playing football. Finishing this, she drove the car out of the driveway to the front of her home where she stopped a few minutes. She then drove north on Lake Street to the Yale Avenue intersection, passing Gary and Donald as she did so. Yale Avenue runs east and west. It intersects with Lake Street north of where the boys were playing ball. Darlene turned the car west on Yale Avenue, stopped, backed the car east across the intersection and stopped the car near the center of Yale Avenue, facing west with the front of the car about even with the east gutter line of Lake Street. From this position she started the car in low gear, turned south on Lake Street, attaining a speed of about ten miles per hour. She saw the plaintiff standing near the center of Lake Street, facing south with his back to her car. The evidence shows that he was about 49 feet south of the south curb of Yale Avenue. Donald Hendrickson was a little south of Gary close to the east gutter. He was facing north. He saw Darlene's car approach Gary and shouted, "Gary, look out." As will be noted more in detail hereafter, the

evidence varies as to the location of the Johnson car when Donald yelled. Gary, upon hearing Donald yell, ran in a westerly direction. At about the same time, the car swerved slightly to the right and a collision between Gary and the car soon followed. The evidence shows that Darlene stopped the car almost immediately or within two feet of the spot of collision. Gary was found lying on his back in the street about opposite the center of the left front fender on the east side of the car. His right leg was injured.

It seems to be undisputed that at the time of the accident there were no other cars in that vicinity on Lake Street. It was daylight and the street was dry and the car had good brakes.

The court at the conclusion of the case directed a verdict for the defendants, we suppose on the theory that the plaintiff was guilty of contributory negligence as a matter of law which in law contributed to the accident and that under any view of the evidence the so-called clear chance doctrine was not applicable. We think this was error. Having stated in the main those facts in regard to which there is no dispute we find it necessary to consider the testimony of the witnesses regarding the disputed facts in some detail. In this testimony there is much conflict. We have italicized the portions of the testimony of each witness wherein there are material discrepancies. It should be kept in mind in reading this summation of the testimony of each witness that it is done for the purpose of endeavoring to show the various possible reasonable combinations of the testimony that the jury might make in its attempt to determine the actual relative positions of Gary and the car at different stages of Darlene's journey south on Lake Street from Yale Avenue.

Donald Hendrickson testified that as defendant drove her car south on Lake Street, Gary was about *2 or 3 feet west of the center line of the street;* that he was looking south with his back to the car; *that he saw defendant drive the car towards Gary;* that when it was *about 5 feet from him,* he shouted, "Gary, look out * * * because the car was

going to hit him [Gary]"; that Gary then started running sidewise southwest towards the curb, away from the car; that the car swerved towards the west side of the street; that Gary had just run a few steps when the collision occurred in the vicinity of the left front fender—between the wheel and the fender; that he fell down on his back east of the wheel; that defendant stopped the car *immediately* with the front part of the car about 2 feet away from the curb, and the back part about 3; that it stopped about *10 feet north of Jack's driveway;* that the car did not slow down; and that he did not hear defendant blow her horn.

Jack's driveway referred to above is the driveway of the Ware home where Jack lives.

Jack Ware, who was further south of Gary, was standing on the west parking looking north. He testified that Gary was standing about *a foot west of the center of Lake Street* facing south; that he saw defendant north of Gary driving her car with *"most of the car on the west side of the middle of the street, that line";* that when the car was *within 15 or 20 feet of Gary—that is, when it had just got around the corner, and started to straighten out a little bit—he heard Donald yell,* "Lookout"; that Gary then ran to the southwest sort of sideways about *8 or 10* feet; that he took *3 or 4* sort of running steps; that when Gary started to move over toward the curb, then the car turned out the same way; that the collision occurred near the vicinity of the front wheel on the east side of the car right under the bumper; that the car stopped within a *foot or foot and a half* after the contact; that the wheels were about 1½ feet away from the curb and the back end was about *a foot* further out; that it stopped *13 or 14 feet north of Jack's driveway;* that Gary was laying right by the front of the car east of the front wheel; that he heard no horn sounded by defendant; and that the car did not slow down.

Gary Graham testified that he was standing about *2 to 5 feet* west of the center of the street facing generally south about on the mark "G. G." (*3½* feet *west* of the center line; see Tipton's testimony below) on the map (Exhibit

"A") ; that while he was standing there watching for the ball to come out and be kicked, he heard Donald yell; that he ran 2 or 3 steps to the southwest—about 3 to 5 feet; that his right leg came in contact with the left front fender and wheel of a car; that damage to his leg was done by getting it caught between the fender and the wheel; that he fell back on the pavement just east of the left front wheel; that he did not see the car at the time of the impact; that no horn was sounded; and that he denied backing into the car.

William Y. Tipton testified that he made the map, Exhibit "A"; that the three boys at the scene of the accident pointed out to him where they were standing; that he marked the places on Exhibit "A" where each was standing; that the place where Gary Graham was standing—that is, where "G. G." is marked—is 3½ feet west of the center line of the street.

Darlene testified that as she drove south on Lake Street the car was in low gear traveling at about 10 miles an hour on the *extreme west side of Lake Street;* that she saw Gary the entire time she drove from the corner down to the time of the collision; that she saw Gary standing about 1 or 2 feet *east* of the center line of the street facing south with his back to her; that she knew he was playing football and was intent upon the game; *that she drove her car over by the west curb to get past the boys so she wouldn't disturb their play and so she could get in her driveway;* that she didn't sound her horn so as not to startle them; that she did not know when Gary might move; *that the first time she observed him change his position her car was due west of a certain point marked* on the map; that Gary was rather southeastward from the front of the car; *that Gary started backing up in a northwest direction,* towards her car; that she tried to slow down a little; *that he ran back about 10 or 12 feet in which time her car* travelled 2 or 3 feet; that she didn't sound her horn after Gary started to run as there was no time to sound it, he was running so fast; that she tried everything possible to get

the car stopped; that she turned the car to the right a little to avoid Gary; that Gary hit the rear of the left front fender—the middle of the rear part of the front wheel; that he just flipped himself over onto his back; that she didn't know how Gary got his leg hurt nor whether the wheel touched him; that she stopped the car in about 2 feet or almost instantly; that it stopped about *10* or *12* feet from the north side of Jack's driveway; that the front of the car was about *1½* feet away from the curb and the back about *2* feet away from it; and that Gary was lying by the rear of the front fender, east of it—right opposite the place where he and the car had come together.

From the testimony as above indicated, it is apparent that the witnesses varied as to the position of Gary on the street from *2* feet *east* of the center line to 5 feet *west* of the center line; that when Donald yelled the car was coming directly toward Gary and was from 5 feet to 20 feet away from him or that it was far over toward the west side of the street near the west curb opposite Gary out of danger to him; that at the yell Gary ran sidewise southwest from a few steps or 2, 3 or 4 steps, a distance of from 3 feet to 10 feet, or that he ran backward in a northwest direction toward the car 10 to 12 feet; that the car stopped *immediately after contact* between Gary and the car or within 2 feet of the place where it was when that contact was made; that its right front wheel was 1½ or 2 feet from the west curb and the back right wheel was 2 feet or 3 feet away from the curb; that when the car stopped the front end was 10 or 12 or 13 or 14 feet from the north side of Jack's driveway. But these are not all the choices that the jury might take to make possible combinations as to all the main facts. For instance, the jury might deduce that Gary ran nearly 20 feet after Donald yelled. It is not denied that before Donald yelled he was standing about 49 feet south of the south curb line of Yale Avenue. Nor is it disputed that the distance from the south curb of Yale Avenue to the north line of Jack's driveway is 77 feet. The car stopped from 10 to 14 feet north of the north line of

Jack's driveway. The car was 17½ feet long. Its right front wheel was 1½ to 2 feet from the west curb of Lake Street and it stopped from 2 feet to almost immediately after it struck Gary or Gary struck it. And when Gary started to run we must place him somewhere between 2 feet east to 5 feet west of the center line. Therefore, the distance Gary may have run before his accident depends upon which combination of testified statements comporting with reasonableness is adopted. The distance may have been from 14 feet to 20 feet.

The jury must be relied upon to choose among only possible and reasonable combinations and the court should so instruct. For instance, we may start with the assumption that the car when the accident happened was nearly parallel to the west curb and that its right front and its right back wheels were respectively not more than 2 feet and 3 feet from the curb. We know the car was 17½ feet long and we can assume that its front end was somewhere between 10 feet and 14 feet from the north side of Jack's driveway, which was 77 feet south of the south curb of Yale Avenue. And there was no dispute in the testimony of Tipton that where Gary placed himself before Donald yelled was 49 feet south of said south curb. If the car was headed straight for Gary and *part* was over the east of the center line and at the time Donald had yelled it would be unreasonable to determine that a car 17½ feet long did a serpentine within a possible north and south distance of 23 feet (77'–10'–49'+5') and straightened itself out practically parallel to the west curb of Lake Street. On the other hand, if the car was further behind Gary when Donald yelled—say 20 feet as testified to by Jack— and Gary was from 3 to 5 feet west of the center line, the jury must determine whether the car could have swerved over within a north and south distance of 38 feet (77'–10'–49'+20') and straightened itself out parallel to the curb.

We are now in position to discuss the legal principles applicable to each relative situation of the parties during

Darlene's course south on Lake Street which the jury might reasonably find and the duties of the plaintiff and defendant minor under those various situations.

We start with not only the assumption but the knowledge that Gary was negligent in playing in the street in violation of Sec. 5321, Revised Ordinances, Salt Lake City, 1944, which provides in effect that it shall be unlawful for any person to obstruct any street by playing games ■■ thereon, such as the game of ball, or annoy or obstruct free travel of any vehicle. But such violation does not permit a driver to use the street in the same manner as if no person were playing games thereon. A duty devolves on drivers to drive with care under the circumstance of the presence of the boys in the street.

Perhaps the clearest way to conduct this discussion from this point on is to consider the two general routes that the jury might find from the evidence that Darlene may have taken while proceeding south on Lake Street and note her duty toward Gary at each change of relative ■ positions of him and the car. First: On the finding that she proceeded down the center or approximately the center of Lake Street near the west Curb. We consider them in that order. On the first supposition: Darlene knew that the boys were playing in the street. She knew or should have known when she turned back into Lake Street from Yale Avenue that Gary had his back turned, that he was intent on the game and that he was probably unaware of her approach. The record is conclusive that she did not at any time blow her horn or give warning of her approach. This omission to sound her horn or give any timely warning is one of the particulars of negligence charged to the minor defendant. On an appeal from a directed verdict the evidence must be construed as strongly as may be in favor of the appellant and he must be given the benefit of every fair inference and intendment which may be taken from it. We can assume therefore that the jury could have found from the evidence that Darlene was negligent in failing timely to sound her horn. Just when

on her course she should have done this depends on circumstances. A sounding of the horn when she started from Yale Avenue would have put the boys on notice that she was coming and probably have avoided the accident but there was opportunity from that time until she approached quite near Gary to sound her horn. It is hardly probable that even if she startled him he would have run backwards if she remained back of him. All during that distance then she had the clear chance to warn him and get him out of the way. If she waited until she was by the side or nearly to the side of Gary and then sounded her horn she might have startled him into running into her which appears to be what did happen when Donald cried out. The matter involves two problems—one of duty and one of causation. Under the theory now being considered Darlene was approaching Gary and increasing the proximity between him and the car and thus increasing the actual or apparent danger to him. If she could stop within a short distance as she says she could at the speed she was going, she probably would, had he remained stationary, have stopped before she reached him, or if she was far enough to the west, would have passed him without there being a collision. She was bound to anticipate, when she was going to increasingly expose Gary to the risk or seeming risk of the proximity of her car and also knew that he was unaware of her approach, that failure to give a timely warning, might naturally and even likely cause some one, acting reasonably, to give Gary that warning which she failed to give, and that such warning might set him in motion toward her car and if at that time it was proceeding to pass him closely, might result in his colliding with the car. She had first a duty to timely warn him and secondly she was bound to anticipate all the consequences which might naturally result from her failure to perform this duty. Under the theory we are at present considering she had this duty and failed to perform it although she was actuated by a motive of courtesy in not wanting to interfer with their play. She might have gotten by Gary without mishap if

Donald had not yelled. But she was bound to anticipate that if she drove in such fashion that a person watching Gary might reasonably have thought he was in danger, such person might warn Gary and set him in motion. Such intervening act of Donald was not a superseding cause of the injury.

In the case of *Hunt* v. *Los Angeles Ry. Corp.*, 110 Cal. App. 456, 294 P. 745, 748, a young boy was riding his bicycle and was unaware of the approach of defendant's motor bus from behind. There was some evidence to show that defendant was driving at an excessive speed and that he failed to give the boy warning of his approach thereby putting the boy in a position of peril. A young girl, standing on the sidewalk, warned the boy of the imminent approach of the bus, who, thereupon, turned his body and head to the left and looked in the direction of the oncoming bus, and at the same time, according to some of the witnesses, swerved the bicycle to the left sufficienty to be struck by the front of the vehicle. The court held:

"Nor is there any merit in the argument that the warning by the young girl mentioned must have been the sole proximate cause of the accident. Where the injury results from two separate and distinct acts by different persons operating simultaneously and concurrently, both are the proximate cause; and this question was also one for the jury."

See Secs. 442, 443, Vol. II, Restatement of the Law of Torts, as to what is a dependent intervening force and what considerations are important in determining whether an intervening force is a superseding cause.

Restatement of the Law of Torts, Vol. II, § 445, puts the case for the one attempting to protect another from the defendant's negligence as follows:

"If the actor's negligent conduct threatens harm to another's person, land or chattels the normal efforts of the other or a third person to avert the threatened harm is not a superseding cause of harm resulting from such efforts."

In this case if the jury found that the defendant was in such position as to reasonably appear to be endangering Gary, it could then conclude that Donald had acted normally in shouting a warning and that Gary's response to such warning was a normal one to such stimulus; that neither the warning shout of Donald nor Gary's normal reaction to it were superseding causes of the injury and that they were not *independent* intervening causes or forces.

What we have really been considering is a rather unique application of the so-called last clear chance doctrine. Our discussion has dealt with a negligent omission of Darlene in not timely sounding her horn—an omission actuated by a worthy motive but which the jury could nevertheless find to be negligence. It has also been conceded that the boys were negligent in that they were in violation of the ordinance against playing in the street which ordinance was designed for their protection as well as for the expedition of traffic. Why then in this case does not the negligence of plaintiff bar recovery even though Darlene was negligent? The reason lies in the fact that in this situation the so-called humanitarian doctrine of last clear chance applies.

The case of *Dervin* v. *Frenier,* 91 Vt. 398, 100 A. 760, 761, has some bearing on this phase of the case. Plaintiff, a boy of 16, was engaged with several others in playing football. He was standing in the street absorbed in the game. Defendants, aware of plaintiff's presence in the street, drove up from behind at a moderate speed, and, without sounding the horn, turning aside, checking their speed, giving a warning shout, or making the slightest effort to avert the accident, the defendants ran the car against the plaintiff: The court held:

"For these defendants to proceed up the avenue, even at a speed of eight miles an hour * * *, all the time seeing this boy standing in the gutter with his back to them and apparently unmindful of their approach, and to run him down without the slightest effort to warn or avoid him, is so indicative of carelessness as to afford abundant evidence to make a question for the jury. If the plaintiff was making an improper use of the street, this fact did not relieve the defendants

of the obligation of exercising due care. They saw him and they were thereafter bound to proceed with measure of caution that a careful man who faced such a situation would exercise. * * * True it is that streets and highways are not established for playgrounds, and such use of them is not to be encouraged; but children always have and always will put them to that use to some extent, and they do not thereby become outlaws or trespassers, or necessarily forfeit their rights therein as travelers."

In Chapter 17, §§ 479 and 480 of Vol. II, Restatement of Torts, the last clear chance doctrine is stated in regard to two situations. Sec. 479 dealt with a situation where a plaintiff has been negligent in getting himself in a situation from which he cannot extricate himself or in getting himself in a condition where he cannot by alertness avoid the danger in which defendant subsequently puts him, example being when a man goes to sleep on a railroad track or gets his foot caught in a frog. In either case the point has been passed where he could by alertnes avoid the danger of the oncoming train. Sec. 480 deals with the situation where the plaintiff was inattentive but had the ability, had he been alert, to avoid the oncoming danger to which the defendant was subjecting him. But in both cases the liability of the defendant arose because he failed to take the opportunity which he alone had timely to avoid doing the plaintiff harm even though the plaintiff was negligent in getting himself in a position where he was helpless or because he was so inattentive that he was not alert to the approaching danger over which defendant had control. And in both cases to hold the defendant liable it must plainly appear to the jury that defendant knew or reasonably should have known of plaintiff's helpless peril or of his inattention and after such realization or after he reasonably, had he been conducting himself with the vigilance required of him, should have known it,

"is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

In the clear chance doctrine the plaintiff's negligence has become in a sense fixed and realizable and on to this

state of things defendant approaches on to the negligent plaintiff with and in control of the danger.

It should be noted at this time that in the application of the last clear chance doctrine the law is not concerned with any of the antecedent facts which do not have anything to do with the doctrine. Thus the doctrine is the same in a two, three or four phase situation. We illustrate as follows: A defendant is exceeding the lawful restricted speed limit; another driver, the plaintiff, fails to keep a proper lookout and crosses the path of the oncoming car and gets stalled on its path. Both up to that point might be guilty of negligence and neither be able to recover against the other. But if the oncoming driver, realizing the situation of the plaintiff, had a clear opportunity to avoid the accident and failed to utilize it, that counts just as if the plaintiff had not been negligent and the defendant had been. An incorrect but rather dramatic way of putting it is that defendant's first negligence and plaintiff's negligence cancel out leaving only the defendant's failure to utilize his opportunity to avoid the accident as the negligence. The first and only negligence which is the basis of recovery under the clear chance doctrine is this failure of the defendant to avoid the harm, having the knowledge and ability to do so.

The jury could find that Darlene, if she was approaching in line with the inattentive Gary or so approximately in line with him as to seemingly be an approaching danger to him, should have realized that he was unaware of her approach and timely warned him. Timely utilization of an existing ability to avoid harming another by a driver of a vehicle does not necessarily mean that he should stop. In the case of an inattentive as compared to a helpless plaintiff a warning may be the most important act required to avoid harm and in the great majority of cases may be sufficient. Stopping may at times be necessary where warning fails to arouse the inattentive plaintiff. Or where the defendant has timely failed to warn plaintiff it may be necessary to stop if that can then be done. The existing ability of Darlene to avoid harming the plaintiff consisted not only in her

ability to stop within a very short distance but in her ability to sound a very timely warning. Under the very supposition we are considering she had the duty to anticipate that if she did not call Gary's attention to her approach someone else reasonably apprehending that she might strike Gary, might, by an alarm, start him toward her when she was silently trying to pass him. The jury might conclude that Donald yelled when it appeared to him that she was coming on to Gary and yet that had Donald not yelled she would only have passed close by Gary without striking him—yet that warning by Donald was something she should have anticipated when she failed herself to sound a timely warning, intending to pass by him closely.

A warning should be here inserted calling attention to the fact that we are now only considering the situation where the inattentive Gary startled by another who could reasonably conclude that he was in danger, instinctively started in motion a situation somewhat like the oft mentioned Squibb where the causation claim was spontaneous and involuntary. A caveat should be registered against necessarily applying this same reasoning to a situation where Gary of his own volition moves to catch a football or to place himself in a different position for play. It must be kept in mind that Darlene was rightfully on the street. Her negligence does not consist in being wrongfully there. On the other hand, Gary was wrongfully on the street. But his being wrongfully on the street did not exempt him from using due care and being alert while he was there. Had the city permitted playing on the street, he would have been under duty to use care while he was there in relation to cars also rightly on the street. Certainly his duty is just as great in that regard if he was wrongly on the street. He is not relieved of his duty to be alert and use care because he continued to violate the ordinance by remaining there. He cannot purchase absolution from necessity of care while on the street because of his first wrong in placing himself there or because of the wrong of remaining there. And had he run while there, not in response to Donald's yell which

was in turn a normal response to Darlene's seeming a menace to Donald, but in play and then struck Darlene's car we might have a plain case of his failing to be alert for cars while playing concurring with her failing to give a timely warning, that is, a case of plaintiff's contributory negligence concurring with Darlene's negligence.

We now proceed to discuss the second supposition, to wit: that Darlene's whole course south on Lake Street while in the vicinity of Gary was close along the west curb. Darlene testified that she drove south on the extreme west side of Lake Street; that Gary was southeastward from the front of her car; that he started backing sidewise in a northwest direction towards her car; that he ran back about 10 or 12 feet in which time her car travelled 2 or 3 feet. It seems incredible that Gary could run 10 or 12 feet from a standing position while her car travelled only 2 or 3 feet going at 10 miles an hour. From the very inference of her own testimony, she must have travelled at least 14 feet southward after Donald yelled and before the accident occurred. If Gary, who she says was 1 to 2 feet east of the center line of the street, started backing up in a sidewise northwest direction towards her car, for almost 10 or 12 feet, it is to be wondered how the accident could have occurred over 16 feet southwest from the point where she, by inferences from her own testimony, positioned him before he began to run. It appears, therefore, that, in considering her testimony, we must consider the inferences to be derived from where she positioned Gary and where she positioned the car when it came to a stop. From some testimony of Darlene combined with testimony of others it may be inferred that Gary ran nearly 20 feet to the point of the accident. The inference from certain testimony is that she could have been so far as 20 feet behind Gary when Donald yelled and could have gone as far as 23 feet before stopping while Gary could have run about 20 feet in a diagonal direction before he struck the car if the jury believed Darlene's testimony that he was 1 to 2 feet *east* of the center line when he started to run. It would seem, therefore, that even if she was far

enough west not to have been a menace to Gary, we cannot say as a matter of law that she could not have warned him or stopped her car after he started to run. We cannot say in this situation that the clear chance doctrine may not apply.

Again we remind the reader that the plaintiff was negligent in playing in the street; that defendant was rightly in the street. If she came on in such fashion as not to endanger Gary, the jury might find that she was not negligent in failing to sound a warning or that if she was so negligent that the plaintiff had a duty to keep alert. Thus the jury might conclude that at the most it was only her negligence against his contributory negligence and that he therefore could not recover. At least if she had the duty to give warning it would be as a prudent driver rather than on the clear chance theory and the failure to warn would have spent its effect. In that case Donald's yelling would not have been expectable, and being unreasonable would have been a new and independent cause of Gary's moving into danger. At that stage *if she had ample time* to stop or *otherwise by a sound of the horn* avoid the accident if she could *timely* appreciate that Gary was heading for danger, such duty—a last clear chance duty—would have devolved on her. But in the last clear chance doctrine the word "clear" has significance. In a case such as this when both parties are more or less rapidly changing their positions the evidence must be clear and convincing that the party whom it is claimed could have avoided the accident had a "clear" chance to do so.

Construing any reasonable combination of facts on this theory of the case most favorable to Gary, if Darlene was coming at 10 miles an hour down the extreme west side of the street and Donald shouted at Gary setting him off toward the car when he, as must in such case be inferred, was not then in danger, the jury must be instructed that it should be clearly convinced in such case that she was far enough north of him as to give her a clear chance to avoid the accident. That is to say, she must have had a clear and

ample opportunity to sense the danger into which he was coming and clearly have had time after that to apply her brakes and stop the car after she sensed or should reasonably have sensed that he was putting himself into danger. Otherwise there is no room for the application of the last *clear* chance doctrine. One should not be held liable for failing to avoid the effect of the other's negligence in a situation where it is speculative as to whether he was afforded a clear opportunity to avoid it. In a situation where both parties are on the move the significance of the word "clear" is most important. Otherwise we may put the onus of avoiding the effect of one's negligence on a party not negligent. That party's negligence only arises when it is definitely established that there was ample time and opportunity to avoid the accident which was not taken advantage of.

In situations where reasonable minds must all come to the conclusion that a defendant had ample opportunity to utilize an existing ability to avoid harm to the plaintiff the court should direct a verdict for the plaintiff; in situations where reasonable minds must all conclude that a defendant did not have such opportunity the verdict should be directed for the defendant. In those intermediate situations such as the supposition under the evidence that Darlene was coming down on the far west side of the street where the court is in doubt as to whether all reasonable minds could conclude one way or the other he should submit the case to the jury with instructions that it should be clearly convinced that the defendant had a clear chance, viz., ample opportunity or clearly an existing ability at the time she reasonably should have appreciated the plaintiff's danger, to avoid harming him; otherwise it should find for the defendant.

From our recitals of the evidence and our exposition of the law, it is apparent that the jury must be given an opportunity to determine what the facts of the case really are and that it must be armed by instructions from the court in accordance with the law herein laid

down to apply the proper law to the fact situation or situations as it finds them.

The judgment of the lower court is reversed with instructions to reinstate the case, to grant a new trial and to proceed in accordance with this opinion. Costs are awarded to the plaintiff.

McDONOUGH and TURNER, JJ., concur.

WADE, Justice (concurring in the result).

I concur with the result on the first ground stated in the opinion of Mr. Justice WOLFE. At the time Darlene started to go south on Lake Street toward the boys she had a clear picture of the whole situation; there was no hurry or excitement to confuse her or interfere with her deliberate judgment. Under these circumstances, she proceeded toward the boys without sounding her horn or otherwise giving Gary any warning of her approach, knowing that he was intent on the game and probably not conscious that she was coming. The sounding of her horn at that time would clearly have avoided the accident. Under these circumstances, the case comes within the doctrine of the last clear chance.

I do not agree that Darlene had a last clear chance, under the second ground stated in Mr. Justice WOLFE'S opinion, to avoid the accident by sounding her horn or stopping the car sooner than she did after the warning had been shouted to Gary. I do not believe that the jury could reasonably find that Gary moved at most more than three or four running steps after the warning was shouted to him before he collided with the car. Coming unexpectedly as this warning shout did, it would take some time after Gary started running before Darlene could discern that he was moving toward the path of her car and apprise her that he was in danger, and it would take further time thereafter for her to start to try to sound her horn or apply her brakes. Whatever action she took during that time would be the result of reflex action rather than deliberation and clear thinking. Under such circumstances, the last clear chance

doctrine has no application. That doctrine contemplates that after the one party has placed himself in a perilous position there is a clear chance on the part of the other party to avoid the accident. In view of the short time which elapsed after the warning shout to Gary was given before he collided with the car, and the fact that the shout came as a complete suprise to her, and the swift movements of events during that time, there was no clear chance afforded her to avoid the accident. I believe that this is a case where reasonable minds must all conclude that defendant did not have a clear chance to avoid the accident, and therefore that the court should not submit this phase of the case to the jury.

LARSON, C. J., dissents.