# MORBY v. ROGERS.

No. 7698.  Decided January 8, 1953.  (252 P. 2d 231.)

See 61 C. J. S., Motor Vehicles, sec. 526. Motorist's duty toward bicyclists. 5 Am. Jur., Automobiles, sec. 184; 172 A. L. R. 736.

*Jensen & Snow, E. C. Jensen, Robert John Jensen, R. A. Burns* and *Zar E. Hayes,* all of Salt Lake City, for appellant.

*Sheffield & Sheffield, Dean W. Sheffield,* and *Ralph A. Sheffield,* all of Salt Lake City, for respondent.

McDONOUGH, Justice.

Plaintiff brought this action to recover damages for the death of his son resulting from a collision between an automobile driven by defendant, and a bicycle ridden by deceased. From a judgment on a verdict in favor of plaintiff, defendant appeals.

At approximately 4:45 p. m. on April 29, 1950 defendant, accompanied by his wife was driving north on the east side of 13th East, at about 5100 South in Salt Lake County. The road at this point runs north and south and lies between two small knolls—gently sloping towards the north but almost

level at the place of the accident. The paved portion of the road is about 18 feet wide with six foot shoulders and has no curves at this point. A canal known as Cottonwood Creek runs along the west side of the road. This canal is about eight to ten feet wide and five to six feet deep with a flat bottom. A railroad tie bridge leading to a farm lane crosses the canal at the approximate point of the accident.

Driving conditions were good the weather being clear, visibility good, road dry and traffic sparce.

As defendant approached the spot described above, he observed the deceased on a bicycle also proceeding north on the east side of the highway. In attempting to pass deceased a collision occurred between the automobile and the bicycle resulting in fatal injuries to the deceased. The boy's body was propelled to the highway and came to rest east of the north end of the wooden bridge approximately two or three feet from the west side of the road. After the collision the defendant's car proceeded northwest into the creek. There were no eye witnesses to the accident except the defendant and his wife.

Upon trial defendant asked for a directed verdict and a judgment notwithstanding the verdict, both of which were denied by the trial court. Defendant contends that his motion for directed verdict should have been granted.

Basically the grounds for defendant's appeal are three in number:

(1)   The evidence is insufficient as a matter of law to support a finding of negligence on the part of the defendant.

(2)   That decedent was contributorily negligent as a matter of law.

(3)   That the last clear chance doctrine is not applicable in this case.

We will dispose of these points in the order they are stated.

(1) It is well settled that in order for a court to grant a request for a directed verdict or for a judgment notwithstanding the verdict grounded on non-negligence of defendant, the record must disclose no evidence against the party so requesting upon which reason- ∎ able minds could find him guilty of the negligence charged. The issue here, then, was whether the record disclosed any evidence upon which the jury could have found the appellant guilty of negligence.

It is true that according to defendant's evidence his speed at any time did not exceed 30 miles per hour and that such speed appeared to be reasonable under the circumstances and condition of the road. The record also discloses that the boy was observed by defendant and that defendant testified he gave warning to the boy through the medium of his horn at the distances of 200 feet and 20 feet behind the boy before the accident occurred. Furthermore, the record establishes the position of defendant's car in the canal after the accident which would justify a jury's conclusion that defendant did attempt to avoid the accident by quick action to the left. There is also defendant's testimony to the effect that the sole cause of the accident was the negligence of the deceased in making a quick and unheralded turn to the left into the path of defendant's car.

Reasonable minds, however, would be justified in inferring negligence on the part of defendant from circumstantial physical facts also brought out in the record. For example the lack of skid or brake marks would justify an inference against defendant's purported "quick action" to avoid the accident. The final position of the automobile in the canal would justify a finding that defendant was traveling faster than his testimony indicated and that such speed indicated his lack of control over the automobile at the time of the accident. Furthermore, the testimony in regard to the boy's injuries would justify a finding that the deceased was struck with great force and was not "just

tipped over" as defendant and his wife testified. The fact that extent of injury to the bicycle consisted of a damaged read mud guard and that there was no injury to the front of the bicycle would justify a finding that the boy did not turn into defendant as was contended, but rather was struck from behind. In addition to this reasonable minds could find from the point of impact and the position of deceased's body that the boy had not made any sudden turn but had gradually veered over onto the west portion of the highway before he was struck.

It is not a new or novel principle that acts of negligence may be proved by circumstances. Certainly, in many cases, particularly where the only eye witnesses are parties having an interest in the action, such circumstances are the only means by which certain facts may be discovered. In such cases it is proper that such circumstances should be evaluated by the jury in whose province lies the power to believe or disbelieve the testimony and evidence, to observe the demeanor of the witnesses, and to draw such reasonable conclusions from the whole record as may be warranted.

We are of the opinion that reasonable minds could find negligence on the part of the defendant from the evidence in the record. The trial court therefore did not err in letting the question of defendant's negligence go to the jury under the evidence.

Appellant's second assignment raises a point not heretofore expressly considered by this court. Appellant, relying upon the Motor Vehicle Code, U. C. A. 1953, 41-1-1 et seq., and upon his contention that the record shows that deceased made a sudden turn without signalling or ascertaining whether it was safe to turn at the time he did, maintains that deceased was contributorily negligent as a matter of law and hence is barred from recovery. This

point is raised by appellant's objection to Instruction 12 which instructed that

"a boy of 13 years of age is not held up to the same standard of care as an adult, but that he is assumed to have the same consciousness of danger and the same judgment as an ordinary reasonably prudent boy of 13 * * * and that it would be negligence for an adult to violate the statutory duty imposed by the Motor Vehicle Code, and it would be negligence for a 13 year old boy to make such a turn without complying with the standard if the jury should find that a reasonably prudent person of 13 would know and appreciate the danger of trying to make such a turn without signalling."

The problem thus presented to us is whether the generally accepted rule as to consideration of an infant's age and capacity in determining the question of his negligence is to prevail over the rule establishing negligence as a matter of law upon violation of a statutory duty promulgated for his safety. We believe that it should.

In *Nelson* v. *Arrowhead Freight Lines,* 99 Utah 129, 104 P. 2d 225, 229, we noted that it is generally recognized that ordinarily a child under 7 years of age is conclusively presumed not guilty of contributory negligence, and between the ages of 7 and 14, in absence of showing to the contrary, an infant is generally assumed not to have the same consciousness of danger and judgment in avoiding it as an adult, but that above the age of 14, in the absence of showing to the contrary, an infant is generally charged with having attained that development which imposes upon him the same degree of care as an adult. In the *Nelson* case action was brought for the death of two minors, one 16 the other 20, who were riding in an automobile in such manner as to obstruct the view and control of the driver in violation of the Motor Vehicle Code. A requested instruction to the effect that

"each minor was required to exercise only that degree of care and caution which persons of like age, capacity and experience might be reasonably expected to exercise"

was refused by the trial court. We held that this refusal was not reversible error but we did not directly consider the question now before us. Our statement in the *Nelson* case in regard to the present question was

"We do not hold that the requested instruction was improper nor that it might not have been better to give it. What we do hold is that in view of the record and the instructions given, the failure of the court to give the requested instruction is not reversible error."

In *Graham* v. *Johnson*, 109 Utah 346, 166 P. 2d 230, 233, involving injury to a 13 year old boy we stated,

"We start with not only the assumption but the knowledge that Gary was negligent in playing in the street in violation of Sec. 5321, Revised Ordinances, Salt Lake City, 1944".

However, the question now before us was not raised in the briefs and was not further nor directly considered by this court. The quoted statement merely opened the discussion of last clear chance which was the point discussed and decided by *Graham* v. *Johnson*, supra.

*North* v. *Cartwright*, 119 Utah 516, 229 P. 2d 871, 872, was an action for injuries suffered by a 17-year old plaintiff resulting from a collision between an automobile and a motor scooter operated by plaintiff in violation of the Motor Vehicle Code. In this case the sole question before this court was whether plaintiff was guilty of contributory negligence as a matter of law. We stated,

"These statutes were promulgated for the protection of the public and to safeguard property, life and limb of persons using the highways from accidents of the type here involved. Violations of these statutes then, constitutes negligence in law."

In this case again, however, the question now before us was not raised in the briefs and was not directly considered by this court. Furthermore, plaintiff's age was such as is generally held to impose upon him the same degree of care as that required of an adult.

In all these prior cases except *Nelson* v. *Arrowhead,* supra, the decision was made without discussion of the fact of the infancy of the plaintiff or the applicability to an infant plaintiff of the rule that violation of a statutory duty is in law negligence.

An excellent discussion of the problem under consideration is to be found in 174 A. L. R. 1170. It is there pointed out 174 A. L. R. at page 1172, that if the statutory violation rule is to be applied without regard to the rules as to special consideration of the factor of infancy, the result is a complete abrogation of the jurisprudence relating to the negligence and contributory negligence of children, where the child has been guilty of law violation, whereas if the ordinary rules as to the contributory negligence of children are to prevail, it does not require any abrogation of the statutory violation rule, except where the child may fall in the first classification recognized by us in the *Nelson* case, supra. If the child is beyond this age and initial capacity is established or assumed, there is room for the operation of the statutory violation rule where the conduct of the infant violator does not conform with the special standard of care applicable to him. Such operation of the statutory violation rule would be restricted to the extent that the child's conduct is in conformity with his proper standard of care, however.

As is not unusual, there is a split of authority upon this question. The minority view which gives the statutory violation rule precedence, however, is largely supported by cases much like the Utah cases discussed above where the rule was applied without discussion of the fact of the infancy of the plaintiff. The majority view which upholds consideration of infancy is well represented by the case of *Locklin* v. *Fisher,* 264 App. Div. 452, 36 N. Y. S. 2d 162, and *McNamarra* v. *Cohen,* 184 Misc. 872, 55 N. Y. S. 2d 600, which concluded that the violation rule should be limited by consideration of the age, intelligence, and experience

of the violator. We adopt this majority view and conclude that whatever rule is ordinarily applicable in cases involving a law violation by an injured infant, it is at least to be tempered by a proper consideration of such person's age or capacity. This consideration is within the province of the jury under proper instructions from the court.

We are constrained to adopt this view by the following considerations noted by the annotator in 174 A. L. R. 1173:

(1)   Most regulatory or prohibitory laws are not limited in scope to particular persons and by such language include children as well as adults. This is true of the statutes here involved. The rule as to the effect of contributory negligence is likewise applicable to children as well as adults. Yet, where there are no statutory violations by infants involved, all courts qualify the effect of the contributory negligence rule to the extent that it is to be applied only after contributory negligence is established by a consideration of the special standard of care applicable to children.

(2)   A further consideration is the comparison between civil and criminal law. In civil law, where there is no violation of statute involved, special consideration is given to the infant's standard of care. Similarly in criminal law the question of the infant's ability to entertain criminal intent receives special consideration. To declare an infant negligence per se in civil law upon violation of a statute, thereby depriving him of the usual consideration given him in that sphere of the law is inconsistent with the special consideration given him within the criminal sphere of the law.

As succinctly stated in *Williams* v. *Black,* 147 Tenn. 331, 247 S. W. 95, 96:

"A humane public policy deters us from too great a weakening of the safeguards that the law throws around children. We would not be satisfied to relieve motorists and others of the obligation of ordinary care to avoid injuries to minors on the streets, even though such minors were themselves violating the law."

The fact that the rule prevailing in this jurisdiction that a law violation is negligence as a matter of law, does not overcome the rule that the contributory negligence of a child is to be determined according to the proper standard of care with which he is charged, does not ■ mean that the statutory violation rule is nullified where children are involved. If the violation of a statute by a child is found to evidence less care than that which ordinarily could be expected of a child of the same age, intelligence, knowledge, and experience, he could be held contributorily negligent barring his recovery. On an issue of contributory negligence, this measuring and judging the accountability of children of immature age is ordinarily to be left to a jury as a question of fact about which there might be reasonable difference of opinion. The trial court did not err in so ruling.

Appellant further contends that the trial court erred in submitting the case to the jury upon the theory of "last clear chance" of the defendant to avoid the collision. He relies on *Graham* v. *Johnson,* supra, in which we stated:

"* * * One should not be held liable for failing to avoid the effect of the other's negligence in a situation where it is speculative as to whether he was afforded a clear opportunity to avoid it. In a situation *where both parties are on the move the significance of the word 'clear' is most important.* Otherwise we may put the onus of avoiding the effect of one's negligence on a party not negligent. That party's negligence only arises when it is definitely established that there was ample time and opportunity to avoid the accident which was not taken advantage of." (Italics added.)

There is no doubt but that in order for the question to be properly submitted to a jury the evidence must be such as would reasonably support a finding that there was a fair and clear opportunity, in the exercise of reasonable care, to avoid the injury. It would not be sufficient that it appear from hindsight that by some possible safety measure, or even by reasonable care, the defendant by "the skin of his teeth" could have avoided the collision.

This court has heretofore approved the treatment of the last clear chance doctrine as set out in Secs. 479 and 480, Restatement of Torts, see *Compton* v. *Ogden Union Railway & Depot Company*, 120 Utah 453, 235 P. 2d 515, for a discussion of those sections.

Sec. 480 reads as follows:

"A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant (a) knew of the plaintiff's situation and (b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

Thus the matter was properly submitted to the jury if the evidence, taken in the light most favorable to the plaintiff, would reasonably support a finding (a) that the defendant knew of the plaintiff's situation of danger, and (b) realized or had reason to realize that the plaintiff was inattentive and unlikely to discover his peril in time to avoid harm, and (c) the defendant thereafter was negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff.

In analyzing the facts to determine whether these elements exist, we find that the defendant was traveling northward along the surfaced road according to his own testimony; his speed was 25 miles per hour; he first observed the boy on his bicycle traveling the same direction about 300 feet ahead of him. at about 200 feet he sounded his horn, but at no time did the boy ever give any indication that he heard any warning of defendant's approach. It would not be unreasonable, therefore, for the jury to find that defendant was aware that the boy was oblivious to his approach. Defendant said he first realized the danger of collision at a distance of 78 feet from the point of impact, which indicates that the boy must have at that point started

to turn, and as hereinbefore indicated. Reasonable minds could find that he had not made any sudden turn but gradually veered over to the west portion of the highway. Notwithstanding the defendant realized the danger of collision at the point mentioned, he took no safety measure whatsoever. He waited until within 20 feet of the boy when he sounded his horn and started to turn to his left or on to the west portion of the highway, apparently attempting to go around him on the west side; this resulted in striking the boy about 2 feet from the west edge of the surfaced portion of the highway. At no time did defendant apply his brakes.

Setting aside any consideration of what defendant might have done before he realized the danger of collision, what could he have done after he reached that point, 78 feet from that point of impact? There are at least two safety measures which could have been employed: first, to apply his brakes; second, to sound his horn.

Let us see what the effect of the use of these safety measures would have been, analyzing each separately, but keeping in mind the fact that defendant did not have to rely solely on any one of them.

Application of brakes: The jury could take the lowest speed at which the defendant himself said he was traveling, that is 20 miles per hour (tr. 30). At that speed, during his reaction time he would travel 22 feet before the brakes were applied; after application, his brakes would have stopped the car in 21 feet, making a total stopping distance of 43 feet.[1] Thus, if he had employed this most obvious and usual safety measure, he would have stopped 35 feet short of striking the boy. Defendant also testified that he was traveling about 25 miles per hour (tr. 77). Assuming that speed, he would travel 27.5 feet during his reaction time before the brakes were applied; after application, the brakes would have stopped the car in slightly less than 35

---

[1]Figures from a publication by Utah State Highway Patrol.

feet, making a total stopping distance of 62.5 feet,[1] which would still leave his car 15.5 feet from impact with the boy. It seems unquestionable that at either the above speeds there was a fair, clear margin of safety by which defendant could have avoided the collision if he had applied his brakes when he first realized the danger. Further, if by any chance the brakes had not completely stopped him, he would have slowed down sufficiently to have avoided the collision or at least so that the death or serious injury to the deceased would have been averted.

Sounding his horn: the defendant's own testimony reveals that he was aware that the deceased seemed to be oblivious to his approach. He did sound his horn at 200 feet but waited until within about 20 feet of the boy before sounding it again. Should we exclude the other safety factors above mentioned it seems that the jury could reasonably have found that a further warning by the horn between those two distances may have enabled deceased to learn of defendant's approach and avoid the collision.

The submission of the proposition of last clear chance in the instant case need not depend on either of the two factors discussed above. Particularly it may not have been proper to rest it on the matter of sounding the horn alone, were it the only safety factor available, in view of the fact that defendant did sound his horn twice at the distances mentioned.

Under the facts as above set out, the jury could reasonably find that the defendant, upon discovering the peril of the inattentive boy, was negligent

"in failing to utilize with reasonable care and competence his then existing ability to avoid harming him."

No error was committed in submitting that matter to the jury for its determination.

Judgment affirmed. Costs to respondent.

CROCKETT and WADE, JJ., concur.

HENRIOD, J., concurs in the result.

WOLFE, Chief Justice (concurring).

I am considering this case from two aspects: first, from the standpoint of the traveler on the highway who is without fault except as he may have timely observed the plight of the plaintiff (plaintiff's inattention under § 480 of Restatement of Torts) and failed to thereafter utilize with reasonable competence a clear existing ability to avoid harm to the plaintiff; second, from the standpoint of a youth whose conduct should at all events be judged in the light of "such person's age and capacity." I have not neglected to take into consideration the burden placed on the traveler in instances where his situation is rapidly changing in reference to the situation of another traveler, in which case, as has been often stated, the last clear chance doctrine should not be applicable for the very reason that a clear opportunity on the part of the traveler who is sought to be charged is hard to assay. Consequently, he should not be held responsible for the results of an accident not of his own making nor to which he had contributed, and in respect to which he was not guilty of antecedent or primary negligence. So in my thinking on the application of the clear chance doctrine I have eliminated the idea that Rogers was guilty of primary or antecedent negligence such as too great speed or inadequate lookout in the fore part of this episode when the defendant first saw the deceased and blew his horn. Timely blowing of the horn was what Darlene Johnson, driver of the car in the case of *Graham* v. *Johnson*, 109 Utah 346, 166 P. 2d 230, failed to do.

I prefer to consider this case in respect to defendant's last clear chance duty, as has the author of the opinion, from a point when the defendant was by his own judgment 78 feet from the point of impact, at which time he testifies

he had his first impression of the danger of a collision. I think we should assess his last clear chance duty toward the deceased from that point in the brief history of the events preceding the collision.

With this in mind I depart for a moment to consider § 480, Restatement of Torts. This section has never been quite clear to me because it appears to bring into the case antecedent negligence of the defendant which serves unnecessarily to complicate the problem. For a handy analysis, I requote the section. It reads:

"A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the *defendant's negligence* [underscoring mine] in time to have avoided harm therefrom, may recover if, but only if, the defendant (a) knew of the plaintiff's situation, and (b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

Why is it necessary to frame a rule in the light of danger created by the *defendant's negligence?* I think the phrase "defendant's negligence" should read "defendant's presence." The duty of the defendant toward the plaintiff would arise even though defendant had not been guilty of antecedent negligence, but whose only negligence arose from his (the defendant's) failure to avoid doing harm to an inattentive plaintiff when defendant realized the inattention and further realized that he, the defendant, if he continued on his course, or failed to alert plaintiff, would be likely to harm him; and so realizing had the ability and the opportunity to prevent such harm.

The fact that the defendant may or may not have been guilty of primary antecedent negligence appears to me to be irrelevant in the last clear chance aspect of this case. If the defendant had never at any time closely prior to the accident been proceeding with lack of circumspection as to speed, etc., he would not have been exonerated from re-

sponsibility for the accident if he, the defendant, had had opportunity to stop or materially reduce his speed so as to substantially mitigate the consequences of a collision or timely warn the boy when he, the defendant, was aware or could reasonably have been found by the jury to have been aware that the boy did not realize his danger, and the defendant did realize it and yet failed to utilize with reasonable care and competence his existing ability to avoid harming the boy.

I realize that this means leaving to the jury the questions of whether the defendant was cognizant of the boy's inattention to his approach and whether the defendant had such timely notice of the boy's unawareness as would enable the defendant to act so as to avoid harm to the boy. I am cognizant that unless jury action in such questions is allowed only in cases where it appears, under the evidence that the defendant did have an ample unutilized opportunity to avoid the accident after he learned of the probable unawareness of the plaintiff to his approach, we shall intrude a seeming last clear chance factor in many accident cases and thus subject defendants to liability for a *plaintiff's* negligence because the late and new negligence of the defendant in not utilizing his clear chance to avoid the accident insulated the plaintiff's original careless conduct. Such consequences would, tersely expressed, make the defendant responsible for avoiding the effects of plaintiff's own negligence, a consequence never intended by the authors of the humanitarian doctrine, and a perversion of the fundamental concepts that liability for accident should follow fault, and that a plaintiff cannot recover even for the negligence of the defendant if he, himself, has not conducted himself circumspectly because the law does not aid plaintiffs who are themselves imprudent even though another (defendant) has also shared in the failure to conduct himself with prudence. We have no doctrine of apportioning the effect of negligence in this state. Whether after the experience under the Federal Employers' Liability Act, 45 U. S. C. A. § 51

et seq., such apportionment would be salutary or whether the reform should be along the lines of teaching juries that slight negligence on the part of the plaintiff may not prevent recovery, but only where the so-called contributory negligence is a substantial and efficient factor in the result, or whether the whole law of assessing damages claimed to be attributable to negligence should be reformed so that the claimed damages will bear some relationship to the gravity of the delictions, is for the legislature.

But in this case there are circumstances which I think make it a jury question. The boy gave no sign of recognition of defendant's sound warnings although given twice —certainly a circumstance in itself to put the defendant on notice that the boy had probably not heard them and cause him to again sound a third and emphatic warning even if he had no time to stop or slow down. It was not a case of a rapid change of relative positions of two fast moving vehicles. The cycling boy was riding a *comparatively slow-moving vehicle*. This circumstance alone may give rise to a situation where it is incumbent on the jury to determine in respect to that vehicle whether the comparatively more rapid one had the clear opportunity to avoid the accident or mitigate it into a possible minor collision. Certainly the vehicle which comes with the potentiality for substantial damage, as stated by Mr. Justice McDONOUGH, owes a duty toward a lad on a frail vehicle which duty may not be discharged by the application of logic alone. Regard for life and limb of children does impose on motorists a duty toward those children beyond that called for by adults regardless of violations of law committed by those children.

I have heretofore discussed this case as involving only a last clear chance problem. I agree with Mr. Justice McDONOUGH that whether the defendant was guilty of primary negligence was under the circumstances a question for the jury. But would that question be pertinent if the jury should find that the last clear chance principle was

applicable? In *Graham* v. *Johnson* it was admitted to be applicable because if Gary Graham was definitely negligent in law by playing in the street, then just as definitely under the evidence of that case was Darlene Johnson aware of his presence and aware of his inattention for she had watched from across the street, while washing the Johnson car, the boys and Gary Graham playing in the street. So if Gary was negligent in law in so playing, so was the Johnson girl negligent in failing to give a sound signal, and this was not an antecedent neligence nor a primary neligence, *but her first and only negligence.*

There is nothing in the law that I know of which exempts a negligence arising from the violaton of a rule or ordinance such as street playing by children and the inattention which attends such playing from the application of the last clear chance doctrine. In the case of *Graham* v. *Johnson*, Gary Graham, a 13-year old boy, was wrongly playing in the street in violation of an ordinance. This was negligence in law, and this negligence imposed on Darlene Johnson, leisurely minor driver of the Johnson automobile, the duty to timely sound the horn, definitely a last clear chance to warn the inattentive children on the street. Darlene did not perform that duty; hence the owner of the Johnson car for whom Darlene was acting was responsible to Gary regardless of any question whether Gary as a 13-year old boy had the intelligence and experience to realize the danger of playing in the street, and regardless of his negligence. Even an imbecile playing in the street is entitled to the protection of the last clear chance of a driver. When it is once determined that the driver of a car has in law the last clear chance opportunity and that primary or antecedent negligence is not in the case, it is then not necessary to probe into the question of whether the one to whom such last clear opportunity is owing was of an age to be accountable for contributory negligence. That only comes in when the case is in the stage where it is necessary to determine whether the infant is to be charged with contributory negligence which would destroy his right to recover, because of

such negligence, against the defendant. But where the case has progressed to the state of the establishment by the fact-finder of a last clear chance obligation, contributory negligence—unless perhaps a further or new negligence on the part of the plaintiff preventing defendant from fulfilling a last clear chance obligation—is immaterial.

This illustrates further the need to guard against an extension of the last clear chance doctrine beyond the domain it was humanely means to serve.

I think it logically follows from my analysis of the reason why we were not in *Graham* v. *Johnson* called on to take up in that case the matter of the possible effect of contributory negligence of the 13-year old Graham boy and the attendant problem of how such negligence is determined, as well as what I have hitherto said, that I fully agree with Mr. Justice McDONOUGH in his clear enunciation of the principle that

"If the violation of a statute by a child is found to evidence less care than that which ordinarily could be expected of a child of the same age, intelligence, knowledge, and experience, he could be held contributorily negligent barring his reovery"

when contributory negligence is applicable. Also I agree with the statement reading:

"On an issue of contributory negligence [which in the last clear chance phase of this case is not present], this measuring and judging the accountability of children of immature age is ordinarily to be left to a jury as a question of fact about which there might be reasonable difference of opinion"

except that at this time I do not commit myself as to whether the standard is

"that which ordinarily could be expected of a child of the same age, intelligence, knowledge, and experience"

or

"the age, intelligence, knowledge and experience of the particular child in question."