IRA D. WINES, RESPONDENT, v. RIO GRANDE WESTERN RAILWAY COMPANY, APPELLANT.

RAILROADS.—KILLING STOCK.—NEGLIGENCE.—Where the evidence in an action for killing stock showed that at a point where there were gates in the fences along the right of way, plaintiff's servants were driving certain animals across the track at a level place where they were within plain view of the engi-

neer for half a mile, and the train came along at the rate of . 35 or 40 miles an hour and no whistle was sounded, and that plaintiff's servants knew the train was due, and that the engineer of the train applied his air brake as soon as he saw the animals, *held* that the evidence being conflicting the questions of negligence and contributory negligence were properly left to the jury.

ID.—ID.—ID.—CONTRIBUTORY NEGLIGENCE.—Where in a suit for killing stock, the evidence showed that at the point on the track where the mule was killed the fence along the railroad was down in certain places, and that the cattle guards were so filled up, that stock could pass over them, that the mule was killed probably when it was running along the track in front of the train, and that high grass was allowed to grow along the right of way, although there was evidence to show that the fence had been in good condition previous to the day of the injury, but had been broken down by throwing ties upon it, *held* that the evidence should have been submitted to the jury under proper instructions.

ACTION.—REAL PARTY IN INTEREST.—ASSIGNMENT FOR COLLECTION.—An assignment of a chose absolute in its terms, so that by virtue thereof the whole apparent legal title passes to the assignee constitutes the assignee the real party in interest for the purposes of an action, although the assignment was solely for the purpose of bringing a suit, and the assignee was to pay to the assignor · everything realized from the suit after deducting expenses.

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial, Hon. John W. Blackburn, judge. The opinion states the facts,

*Messrs. Bennett, Marshall and Bradley,* for the appellant.

*Messrs. Evans and Rogers,* for the respondent.

MINER, J.:

This action was brought to recover damages alleged to have been occasioned by the defendant negligently running its engine and cars, and killing and injuring several horses

and mules of the plaintiff. The complaint alleges five causes of action. In the first cause of action the plaintiff alleges that the plaintiff was the owner of a certain cow. Second. That he was the owner and possessor of four certain horses in May, 1892, of the value of $460. Third. That in April, 1892, Joseph A. Thomas owned a certain mule of the value of $150. Fourth. That in May, 1892. Michael Vaughn was the owner of a mare of the value of $65. Fifth. That in May, 1892, Peter W. Sorenson was the owner of a mare of the value of $150; that, on the day named, said animals, without fault of plaintiff, strayed upon the railroad track of the defendant in Utah county, and were killed by the negligence and carelessness of the defendant and its employés; that said Thomas, Vaughn, and Sorenson respectively assigned their said claim for damages to the plaintiff; and that plaintiff was the owner and holder of said claims for damages. Upon the trial the jury found a verdict in favor of the plaintiff upon all such causes of action except the first. The defendant appeals from the judgment and order overruling his motion for a new trial, and assigns many errors. We shall consider only such assignments of error as are discussed in the appellant's brief, and to which the record shows an exception was taken.

The appellant first contends that there was no negligence or want of care on the part of the defendant or its servants, as shown by the proof, and that the verdict was contrary to the evidence, and indicates partiality and passion on the part of the jury; and, second, that the testimony shows that the injury was occasioned by the negligence and carelessness of the plaintiff's servant in attempting to drive the horses across the track without looking to ascertain if a train was approaching. The circumstances attending the killing of the animals described in the second, fourth, and fifth causes of action were

detailed by several witnesses. From the testimony offered by the plaintiff, it appears that the railroad track, in the locality where the animals were killed, was almost level and straight for several miles, but passed through a deep cut, nearly a quarter of a mile in length. The train was running in a northerly direction, at the rate of 35 to 40 miles an hour. Plaintiff owned land on both sides of this track, and at or near the place where the animals were killed there had been a public traveled road for 30 years. The railroad company had built a wire fence along this track across this road, and had promised to put in gates, so as to allow plaintiff and others to cross its track over this old traveled road, but failed to do so, whereupon the plaintiff placed wire gates at the crossing, so as to allow his cattle to cross from one piece of land to the other. Shortly after the accident, the defendant placed gates at this crossing. On the day in question, plaintiff's servants were driving his animals over this crossing to the corral on the opposite side of the railroad track, and, while doing so, the horses in question ran ahead of the driver, and got upon the track, there being no cattle guards there, and remained there for a minute or two, while plaintiff's servant was driving a mare and colt out. While the horses were standing there, the defendant's express train from the south came along, without whistling or ringing the bell or giving the cattle alarm, at the rate of 35 or 40 miles an hour, and without slacking its speed, and, when the horses were in plain view of the engineer for over a half a mile, ran into the bunch of horses, carrying them along from 300 to 600 feet and killing them.

The defendant's witnesses gave testimony tending to show that the whistle was blown about 160 rods from the crossing and place of accident, and that the sound could be heard one mile; that plaintiff's servants knew the time the train was due; that, as soon as the engineer saw the

horses coming up the fill upon the track, he "applied the air, and threw the engine on the emergency," and that was all he could do; that he did not give the cattle alarm, because it was too late, as the animals were 80 or 100 yards ahead of the train when first seen; that the accident could not have been avoided; that the train could not have been stopped less than 250 yards; that the engineer never knew of the existence of the crossing. It will be seen from this synopsis of the evidence that there was a conflict in the testimony upon the question of the negligence of the company, and as to any contributory negligence on the part of the plaintiff. The court, in its charge, fairly left to the jury all questions of reasonable care, negligence, and contributory negligence presented by the testimony; and we think properly so, as the question of negligence and want of ordinary care on the part of the defendant was one of the facts for the jury to determine, under all the facts and circumstances of the case, and under proper instruction from the court. So, also, the question as to whether or not the plaintiff, by his negligence and want of ordinary care and caution, contributed to cause the injury, and whether or not there was negligence in the plaintiff which was the proximate cause of the injury, and whether or not the defendant, by the exercise of reasonable care and prudence, might have avoided the consequences of the plaintiff's negligence, if it was such, were likewise questions of fact for the jury to determine, under like rules.

Mr. Justice Lamar, in his able opinion in *Railway Co.* v. *Ives*, 144 U. S. 417, 429, 12 Sup. Ct. Rep. 679, says: "The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of man, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be

gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court. Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured, subject to this qualification, which has grown up in recent years, (having been first enunciated in *Davies* v. *Mann*, 10 Mees. & W. 546;) that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence." *Quibell* v. *Railroad Co.*, 7 Utah, 122, 25 Pac. Rep. 734.

Some of the facts presented to justify a recovery on the third cause of action were that the track where the mule was killed was level and straight for nearly one mile; that the land in that vicinity was owned and settled by private parties; that the railroad fence which defendant was required to keep up along the railroad where the injury was done was down in places; that the cattle guards were so filled up with dirt and gravel that stock could pass over them on the track. Mule tracks were discerned

between the rails of the track, indicating that the mule when killed was running ahead of the engine with great speed, jumping, as one witness described it, nearly 20 feet at a jump, for a distance of 100 yards, and was then struck and carried along the track ahead of the engine for about 100 feet, and thrown into the street. High grass was allowed to grow on the company's right of way, which was calculated to tempt cattle. The defendant offered testimony tending to show that the fence through which the mule passed upon the railroad tract was in good condition on the morning previous to the day of the injury, and that it had been broken down by throwing or driving ties through it during that day. The railroad company was bound to use reasonable care in maintaining its fences and cattle guards. It should use such reasonable care as prudent, careful men would use under like circumstances. What was reasonable care in that regard was a question for the jury to determine, under the evidence and proper instruction from the court. The court properly instructed the jury in this regard that "the duty of the railroad company is to maintain its fences, but that duty is limited by the fact that it is only to be done with reasonable care. The railroad company is not bound to stand by the fence, the whole length of it, every hour, to see that it is kept up. In keeping and maintaining the fences, it is necessary to use the reasonable care that a prudent man would under like circumstances; and what is reasonable care in that regard is for the jury to determine, and not for the court. If, where this road was partly fenced or not fenced at all, stock got on there, and were killed, for the want of properly erecting and maintaining a fence or cattle guards, then it is your duty to find for this plaintiff, and assess his damages at the value of the stock killed, with interest, as I have told you."

Upon the issue thus presented, the jury found the

defendant negligent.    The testimony to justify this recovery was somewhat circumstantial in its character, but sufficient upon which to justify the submission of the. question to the jury, and we do not think their findings can safely be disturbed. · The plaintiff was not bound to prove more than enough to 'establish a clear· presumption of negligence on the part of the defendant, and a resulting injury to himself.    Having done this, he is entitled to recover, unless the defendant produces evidence that is sufficient to rebut such presumption.    1 Shear. & R. Neg. §§ 58, 59.

The plaintiff offered testimony showing that the damages and right to recover for the property mentioned in the third, fourth and fifth causes of action were assigned to the plaintiff before the commencement of this suit.    In connection therewith, it appears by the testimony of the plaintiff that the assignments of the causes of action to him were made in writing simply to enable him to sue, and that he would turn over to the assignors all that was recovered in the action, after deducting their proportion of the expenses of the suit.    This testimony was objected to, on the ground that the assignors were the only real parties in interest, under section 3169, Comp. Laws 1888. The objection was overruled, and exception duly taken. It is a well-settled principle of law that actions for damages which survive to the personal representative are assignable. So it is held that an assignee is the real party in interest, and it is immaterial whether or not any consideration was actually paid for the assignment, or whether or not the assignment was merely made for the purpose of the suit, if it was in fact made.    The accredited doctrine governing this question is laid down in Pomeroy on Remedies and Remedial Rights (2d Ed. § 132), where the author says:

" It is now settled by a great preponderance of authority, although there is some conflict, that if the assignment, whether written or verbal, of anything in action, is absolute

in its terms, so that by virtue thereof the entire apparent legal title vests in the assignee, any contemporaneous collateral agreement by virtue of which he is to receive a part only of the proceeds, and is to account to the assignor or other person for the residue, or even is to thus account for the whole proceeds, or by virtue of which the absolute transfer is made conditional upon the fact of recovery, or by which his title is in any other similar manner partial or conditional, does not render him any the less the real party in interest. He is entitled to sue in his own name. Whatever collateral arrangements have been made between him and the assignor respecting the proceeds, the debtor is completely protected by the assignment, and cannot be exposed to a second action brought by any of the parties, either the assignor or other to whom the assignee is bound to account." Bliss, Code Pl. § 51; *Davis* v. *St. Louis,* 25 Fed. Rep. 786; Burril, Assignm. p. 152, § 103; *Anderson* v. *Reardon,* (Minn.) 48 N. W. Rep. 777. We find no error in the record to which any exception was taken. Judgment of the court below is affirmed, with costs.

ZANE, C. J., and BARTCH, J., and SMITH, J., concurred.