## GRAHAM v. JOHNSON et al.

No. 6868.   Decided September 17, 1946.   (172 P. 2d 665.)

366.

*John D. Rice, Willard Hanson,* and *Steward M. Hanson,* all of Salt Lake City, for appellant.

*Jesse R. S. Budge* and *Edwin B. Cannon,* both of Salt Lake City, for respondents.

WOLFE, Justice.

Defendants, reinforced by additional counsel, apply for a rehearing contending that the opinion of this court is in error (1) in that it has misconceived the doctrine of last clear chance; (2) that had Darlene been headed for Gary and started to turn away from him when she was 20 feet behind him, it would have been a physical impossibility to have made the turn and ended in the position she did, approximately parallel to the curb in a north and south distance of 38 feet with a car 17½ feet long; and (3) that if the jury determined that Darlene had been skirting the west side of Lake Street on her way south, we must hold in law that she did not have a clear chance to avoid the impact, because of the shortness of the time. Because of the unique and difficult questions in this case we shall briefly consider in reverse order the contentions made in the brief of respondents. Considering the last contention first, counsel emphasizes the following facts: That under the evidence, the greatest distance Darlene's automobile could have travelled after Gary started to run until the car came to rest was 23 feet, as mentioned in our opinion; that during the same period of time, the great-

est distance Gary could have gone was 20 feet which would indicate that Gary and the car were traveling at approximately the same speed; that figuring the rate of the car as 10 miles per hour as testified to by Darlene (and she was the only one who estimated the speed) the total time which elapsed between the time Gary started to run and the time the impact occurred was one and one-half seconds. This is construing the evidence most favorable to Gary. We think we should say as a matter of law, as did Mr. Justice Wade in his partially dissenting opinion, that such time, under the circumstances of this case, is too short to thrust upon a defendant the responsibility of avoiding the impact. Darlene, in this one and one-half seconds, would have had to become cognizant of Gary's precipitate action, would have had to react to it and have taken the necessary steps to avoid it. When one party thrusts upon another the onus of avoiding an accident which was due entirely to the fact that the first party is in the fairly rapid process of placing himself in the path of a car driven by the second party, the court, before it permits the jury to determine whether the second party could have avoided the accident, must be reasonably sure that there was time enough for the jury to so find. Where the situation is, to reasonable minds, so doubtful as to whether the second party had time to avoid it, the matter should not be given to the jury; otherwise, we are, as said in the case of *Thomas* v. *Sadleir,* 108 Utah 552, 162 P. 2d 112, 115, in grave danger of permitting the one really at

"fault to shift the blame for the accident on the other by accentuation of the other's duty to avoid the effect of the first one's negligence."

For the reasons given above, we hereby modify our opinion in this case to the extent of holding that the lower court on retrial of this case, if the evidence is as it was on the first trial, should instruct the jury that if it concludes that Darlene was moving south well over to the west side of Lake Street at the time Gary started to run, it must hold that she had no clear chance to avoid the accident. Her

opportunity to avoid the accident must not be a mere possibility but a *clear* opportunity. And it must appear to the court that the situation was such when the relative positions of the parties were changing with fair rapidity that the element of doubt as to whether one of them had an opportunity to avoid the accident and therefore a duty to do so must not be great.

Two: Now coming to the first supposition as to the route which Darlene took while traveling south on Lake Street, it is asserted that if she were in line with Gary she could not have turned from that route and ended up so close and nearly parallel to the curb in a north and south distance of 38 feet; that such would have been a physical impossibility. If such is the case, it might be that the first general route which Darlene might have taken and which is set out in our opinion, might have to be discarded. And since we have already held in this opinion that Darlene did not have a clear chance to avoid the accident if she was coming down the west side of Lake Street not in line with Gary, it would result that we should affirm the lower court. In the opinion we said that the choice for the jury only lay among possible and reasonable combinations of evidence. Darlene may have been approaching in line with Gary if the left side of her car were in line with him. In fact, all the duties imposed on Darlene and all the consequences which she was bound to anticipate if she omitted to perform her duty, knowing that Gary was unaware of her approach, would be attendant on a situation where her line of travel would come so close to Gary as to make a person reasonably apprehensive that she would strike Gary even though by her continued travel in the direction she was going she would only have skirted him. Half of the street is 15 feet wide. Taking the evidence most favorable to plaintiff on this argument, we should put Gary 3½ feet west of the center line. The car is 17½ feet long and at least 5 feet wide. If the left or east side of the car was in line with Gary, its right or west side, when it was 20 feet behind Gary, would be 6½ feet from the

curb. We are unable to say from our own knowledge that a car 17½ feet long, the right side of which was 6½ feet from a curb, could not in 38 feet turn right and end in a position in which its front right wheel was 2 feet and its rear right wheel was 3 feet from the curb. If such be impossible, it should have been so shown. In this case we do not receive the benefit of any really thorough analysis of various positions of the car which might be taken from the evidence. That was left for us to do. But even if the defendant could show that it was physically impossible to make the turn in 38 feet of travel distance and end in the position this car did, the case could not be taken from the jury. The 3½ feet west of the center line where Gary placed himself, the front 20 feet behind him where Jack testified the car was when Donald yelled, the distance the front of the car was from the north side of Jack's driveway, were all estimates. A slight variation in one or more of these estimates might permit the car to come to the position it did even if that could not be done in a 38 foot north and south distance. The jury sizes up the whole evidence and from it determines what it thinks really did happen. It is not the slave of stated distances when it knows that they are only estimates. That would be making man for the Sabbath rather than the Sabbath for the man. Hence, we must reject this contention of the defendant. The controlling fact that the jury would determine was whether Darlene was approaching in line or approximately in line with Gary and if she was that she must have made the turn to end when she did and the distances, regardless of estimate, must have actually been such as to permit her to accomplish that turn.

Three: We now come to the most interesting and most important part of this decision—what we stated in the first opinion was a "rather unique application of the so-called last clear chance doctrine." Certainly a like situation as occurred in this case or variations of it would not frequently occur. While we thought the opinion especially explicit in holding the doctrine to the possible reasonable fact configurations which the jury might take from the evidence, it

is apparent from the briefs that counsel has not fully understood the reasoning back of the decision. For that reason and for the reason that we do not want the opinion to be used in situations where it would not be applicable, we now endeavor to clarify the holding of the opinion if it is not already clear.

Defendants say we have misconceived the doctrine of last clear chance. That doctrine like all others has shown development. Defendants say:

> "The plaintiff (or person desiring to invoke the doctrine [of last clear chance]) must be in a position of imminent peril."

That is not the best statement of what defendants mean. It may defeat itself. If the peril is too imminent, there may be no clear chance to avoid the accident. The situation must be such that plaintiff is in a position of peril from defendant's operation either because plaintiff is inattentive or unaware of danger and thus negligent, or because he cannot extricate himself from a position of peril unto which his negligence projected him. Two grown boys at horseplay who run into the street, one chasing the other, unaware that they are approaching an automobile, are certainly negligent. If the car is a half block away when the driver sees or should see the boys racing toward him, he may not have a duty to stop, at least at first, but a duty timely to sound a warning. The last clear chance duty is to do what a prudent person would have done to avoid the accident had he had the opportunity, whatever that would be, after he did or should have appreciated the other's peril or approaching peril. If sheep are massed on a railroad track, sounding a whistle may do little good. The duty there would be to slow down or, if necessary stop. The two boys in the illustration may not have been in imminent peril at the point at which the duty arose on the part of the driver of the car to sound a warning. But the increasing danger to the boys must or should have been appreciated by the driver and there must have been reasonable ground for the driver of the car to realize that the boys would or might continue in their negligent and inattentive

career. If the boys ran out suddenly directly in front of the car, the peril might have been too imminent for an application of the last clear chance doctrine.

To revert to the instant case: Darlene was cognizant of Gary's inattention and his unawareness that she was approaching. He was negligent in being where he was. She had ample opportunity to warn him and put him on attention. To do this *timely* the jury could find was a duty which she owed to the plaintiff even in spite of his negligence and due to his situation. The jury could find that she omitted to perform her duty. What must she anticipate as a natural consequence of her omission? She must anticipate that if she is seemingly placing Gary in increasing peril some one may be reasonably inspired automatically to warn him and that in response to the stimulus of that warning, he would or might naturally seek safety by running. What might be called the automatic chain stems from her omission timely to sound a warning. Nothing in this automatic chain is an independent superseding cause. The situation we are exposing is one where the chain of consequences due to failure to do that which the clear chance dictates, is automatic or semi-automatic—a causation chain as in the well known "Squibb" case, stemming from the act of negligence of the defendant which was an omission to do what a prudent person would have done to avoid the accident when there was a clear opportunity to do so. That omission may have been defendant's only act of negligence but it is on one level and the plaintiff's on another level. The plaintiff's negligence was continuing but static. The defendant, who was controlling and operating the agency of approaching danger, had the clear chance to avoid the effect of the other's negligence and did not do so. That was her negligence and it came after the plaintiff's negligence had become known and fixed.

A rehearing is denied but the opinion is modified as above set out, to wit: That the jury should have been instructed that if it found from the evidence that Darlene was driving her car south on Lake Street not in line or approximately

in line with Gary and Gary had run in response to Donald's warning, she, Darlene, would not have had a clear chance after Gary started to run to avoid the accident and therefore she should not for *that reason* have been held negligent.

McDONOUGH and WADE, JJ., concur.

LARSON, C. J., concurs in the modification of the original opinion and in the order denying a rehearing.

PRATT, J., not participating.