282 P.2d 309

James H. BECKSTROM, Plaintiff and
Appellant,

v.

Paul WILLIAMS, Defendant and
Respondent.

No. 8027.

Supreme Court of Utah.

April 8, 1955.

A. U. Miner, Pugsley, Hayes & Rampton, Salt Lake City, for appellant.

Stewart, Cannon & Hanson, E. F. Baldwin, Jr., E. M. Garrett, Salt Lake City, for respondent.

## CROCKETT, Justice.

Plaintiff James H. Beckstrom brought this action to recover damages for personal injuries and damage to his tractor caused when a truck driven by defendant Paul Williams ran into the side of the tractor as plaintiff was driving it onto the highway from a country driveway. Defendant counterclaimed for damages to his truck. The jury returned a verdict of no cause of action against both parties and plaintiff appealed.

The principal issue presented to this court is whether the trial court committed prejudicial error in refusing plaintiff's request to submit his case to the jury on theory of last clear chance.

The jury having rejected plaintiff's complaint, on appeal we would ordinarily view the evidence in the light most favorable to the defendant. This is not true, however, in this case where plaintiff's appeal challenges the trial court's refusal to submit plaintiff's theory of the case to the jury, as was his undoubted right if the evidence would justify reasonable men in following his theory.[1] Notwithstanding some inconsistency between plaintiff's version of the accident as told to the investigating officer and his testimony at trial, the evidence in his favor was not such that it could be rejected as a matter of law. The question of his credibility was for the jury.

In determining whether the case should have been submitted on the plaintiff's theory of last clear chance it was the duty of the trial court, and it is our duty on this appeal, to consider the evidence in the light most favorable to the plaintiff.

On plaintiff's behalf the evidence can reasonably be interpreted as showing the following:

On August 3, 1951, about 4:30 p. m., plaintiff, 65 years of age, was driving a 2½ ton tractor pulling a side delivery rake eastward from a private driveway onto the north-south highway. The hard surface of the highway at that point was from 21 to 22 feet in width with a shoulder on each side of from 2 to 3 feet. The tractor itself was 11½ feet long with the driver's seat set about 10 feet back. In the driveway plaintiff stopped the tractor to see that everything was all right with the machinery, then proceeded at 1 to 1½ miles per hour in low

1. Morgan v. Bingham Stage Line Co., 75 Utah 87, 105, 283 P. 160, 166.

gear forward into the highway at right angles to the pavement. A heavy growth of trees, weeds and bushes obstructed his view of the highway, and by the time plaintiff leaning forward in his seat could see along the highway the tractor's front wheels were almost to the west side of the hard surface. He saw that the highway was clear to the south; to the north he saw defendant's truck about 325 feet away approaching at a speed of 40 to 60 miles per hour (defendant estimated his speed at 40 m. p. h.; plaintiff at 45 to 50 m. p. h.; and other witnesses at 40 to 60 m. p. h.). Upon seeing defendant approaching, plaintiff shut off the gas placed the tractor in neutral gear and applied both foot and hand brakes. Because there was a little slope down to the highway, he could not bring the tractor to a stop until it was about 5 feet onto the hard surface, leaving about 16 feet of unobstructed roadway. At the instant the tractor stopped, plaintiff saw defendant's truck still some 125 feet distant. The truck continued forward without reducing speed or changing direction and struck the tractor in its left side between the front and rear wheels, throwing plaintiff to the ground, seriously injuring him, and damaging his tractor.

The last clear chance doctrine originated in 1842 in the English case of Davies v. Mann, 10 Mees & W. 546, as an exception to the general rule that one guilty of negligence contributing to his own injury may not recover from the negligent injuror. In that case plaintiff Davies had hobbled his donkey and left it grazing in the public highway and defendant's wagon, going at "a smartish pace," drove into the animal, inflicting injuries from which it died. The doctrine was thus originally applied where the plaintiff's donkey was placed in peril by his owner's negligence from which the plaintiff could no longer extricate it even in the exercise of due care; the defendant had opportunity to know these facts, yet failed thereafter to exercise the normal care necessary to avoid causing injury.

The general principle of the last clear chance doctrine has been accepted in Utah from early times [2] and is firmly established in our law. Its most obvious application is in cases where the plaintiff is in inextricable peril. In the case of Knutson v. Oregon Short Line R. Co.,[3] a boy who had been lying on the tracks, either unconscious or asleep, was killed when the engineer failed to stop the train in time to prevent an accident. Plaintiff recovered at trial, the judge having given an instruction on last clear chance. On appeal this court affirmed, holding that if the boy was "asleep or for other reason was unconscious" he was unable to escape, and the last clear chance doctrine applied.

2. Wines v. Rio Grande W. Ry. Co., 9 Utah 228, 233, 33 P. 1042, 1044; Everett v. Oregon S. L. & U. N. Ry. Co., 9 Utah 340, 349, 34 P. 289, 291; Hall v. Ogden City Street Ry. Co., 13 Utah 243, 258, 44 P. 1046, 1049.

3. 78 Utah 145, 2 P.2d 102.

Similarly, in the case of Teakle v. San Pedro, L. A. & S. L. R. Co.,[4] evidence was excluded which would tend to prove that decedent, who due to his own negligence had been struck by a backing train, was not then killed, but was rendered helpless to escape. The evidence would tend also to show that he was killed when the engine firebox struck him after the entire train had passed over him, and that the train crew could have averted his death if they had been properly attentive. Exclusion of the evidence which could have supported a verdict for plaintiff on the last clear chance theory was held prejudicial error and the case was remanded for a new trial.

An extension of the original doctrine of last clear chance has been made to cases where the plaintiff was not in inextricable peril but was merely negligently inattentive up to the time of the accident; in such instance, before plaintiff may recover, the defendant must *actually know* of plaintiff's inattention and have opportunity to avoid the injury. Illustrative of this extension is Graham v. Johnson,[5] where defendant was driving an automobile along a street in which she saw plaintiff and other boys playing football. She did not sound her horn or give any warning, though plaintiff was obviously inattentive, and ran into him when upon a yell from his companion he started into her path. A directed verdict for defendant was reversed and a new trial ordered on the ground that the issue of last clear chance should have been presented.

■ Both of the facets of the doctrine of last clear chance referred to above are set out in sections 479 and 480 of the Restatement of Torts have recently been expressly approved by this court as correct statements of law.[6] Section 480, which permits recovery despite plaintiff's negligent inattention up to the time of injury *only* if it appears that the defendant *actually knew* of plaintiff's peril,[7] is not applicable to our case. Defendant affirmatively states that he did not see plaintiff's tractor until too

4. 32 Utah 276, 90 P. 402, 10 L.R.A.,N.S., 486.

5. 109 Utah 346, 166 P.2d 230, affirmed on rehearing 109 Utah 365, 172 P.2d 665; see Morby v. Rogers, Utah, 252 P.2d 231; Thompson v. Salt Lake Rapid-Transit Co., 16 Utah 281, 52 P. 92, 40 L.R.A. 172; Shaw v. Salt Lake City R. Co., 21 Utah 76, 77, 59 P. 552.

6. Morby v. Rogers, Utah, 252 P.2d 231; Compton v. Ogden Union Ry. & Depot Co., Utah, 235 P.2d 515.

7. Section 480 reads: "A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant (a) knew of the plaintiff's situation, and (b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

late for him to act. The fact that the defendant did not turn or noticeably slacken speed tends to corroborate this assertion.

■ We are therefore concerned only with that portion of the rule which would permit a plaintiff in inextricable peril to recover from one who had *reason to know* of the peril and to avoid injuring him. Section 479 states the rule thus:

> *"A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby, if immediately preceding the harm, (a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care and (b) the defendant (i) knows of the plaintiff's situation and realizes the helpless peril involved therein; or (ii) knows of the plaintiff's situation and has reason to realize the peril involved therein; or (iii) would have discovered the plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."*

In the present case the trial judge was bound under this rule of law to give the requested instruction on last clear chance only if it appears that reasonable men might conclude from the evidence most favorable to plaintiff that three conditions existed— (A) that plaintiff was in a danger from which he could no longer extricate himself; (B) that defendant knew, or in the exercise of reasonable care should have known, that plaintiff was so endangered, and (C) that defendant thereafter, by exercise of reasonable care, could have avoided injuring the plaintiff.

As to (A), due to the cumbersome nature of the tractor, it seems clear that reasonable minds could believe that as soon as it moved out into the lane of traffic plaintiff was in danger from oncoming vehicles, from which he could not extricate himself or his tractor; that it would have been unreasonable, considering the safety of others, including defendant himself, to expect plaintiff to jump off and abandon the moving tractor upon the public highway; and further, they could have believed that jumping to either side presented plaintiff no assurance of safety. Probably before, but at least after the tractor was stopped, about five feet out onto the highway, (at which time defendant's truck was 125 feet away) it reasonably could be thought that plaintiff no longer had time to escape and was in inextricable peril, there being but two seconds if the defendant were going 40 m. p. h., and less if he were going faster.

As to (B), though there is no indication that defendant actually knew plaintiff's helpless peril in time to avert an accident, the evidence most favorable to plaintiff tends to show that defendant had ample opportunity to know, had he been properly attentive. When defendant was at least

250 feet away, plaintiff's tractor was onto the hard surface and moving forward across the highway in full view of defendant. Concededly until the tractor was actually in the lane of traffic, defendant could reasonably expect that it would stop. But when the tractor continued forward, defendant was bound to know that the driver of such a cumbersome machine could not, in the few seconds required for defendant's truck to reach the spot, get out of the way and avoid an accident.

█ The presence of conditions (A) and (B) thus established, there still remains (C), the more critical question, whether the jury could reasonably find that under the circumstances the defendant did in fact have a clear chance to avert the collision. There can be no doubt that it must be a fair and clear opportunity, and not just a bare possibility. The defendant cannot be put into the position of having to make precise calculation and manipulation to avoid the accident, nor must it require exceptional agility or skill. The chance must be such that an average individual using ordinary care would have a real opportunity to perceive the danger to plaintiff, to realize his inability to escape and thereafter to avoid the harm.

A standard of "clear chance" in a train-truck collision was set forth thus: "If the doctrine of last clear chance is to be invoked, it must clearly appear that time permitted the train crew to appreciate deceased's predicament, and * * * [that] the time element was sufficient to permit the crew to bring the train to a stop." [8] In Morby v. Rogers,[9] it was said: "There is no doubt but that in order for the question to be properly submitted to a jury, the evidence must be such as would reasonably support a finding that there was a fair and clear opportunity, in the exercise of reasonable care, to avoid the injury. It would not be sufficient that it appear from hindsight that by some possible safety measure, or even by reasonable care, the defendant by 'the skin of his teeth' could have avoided the collision."

█ It seems demonstrable here that in looking at the most favorable aspect of the evidence reasonable minds could believe that defendant had such a clear chance to avoid hitting the plaintiff's tractor. By defendant's own testimony his speed was about 40 m. p. h., which is 59 feet per second. Plaintiff's tractor was practically at the edge of the surfaced portion of the highway when defendant was 325 feet away, or a little over 5 seconds away in time. At 40 m. p. h. the stopping distance for normal brakes, including 44 feet traveled in the $\frac{3}{4}$ second normal reaction time, is 126 feet.[10] Thus it seems inescapable that had the defendant

8. Van Wagoner v. Union Pac. R. Co., 112 Utah 189, 203, 186 P.2d 293, 298, 302–303.

9. Utah, 252 P.2d 231, 235.

10. Publication of Utah State Highway Patrol.

been keeping proper lookout ahead and reacted to danger as soon as plaintiff's tractor entered his path on the highway he could have braked his truck to a stop nearly 200 feet short of the point of impact. It is not suggested that defendant was obliged to realize that plaintiff was in inextricable peril at the time plaintiff was enterng upon the highway when defendant was 325 feet distant. But by the time the plaintiff's tractor was 5 feet out onto the highway and stopped, the defendant should have realized that plaintiff was then unable to extricate himself from peril if defendant continued directly toward him in his truck as he did. At that instant, defendant was 125 feet away and still had a clear safe chance to avoid the collision. As above stated, he could have braked to a stop, including his reaction time, in 126 feet, and thus would have avoided injuring the plaintiff. It is not to be thought, however, that braking the truck to a halt was the only, the best, or the easiest means of avoiding an accident. The evidence is that the highway was completely free of other traffic. The tractor came to a halt leaving some 16 feet of unobstructed hard surface to the east which the defendant could have lawfully utilized, turning out the three or four feet necessary to miss the tractor, without any danger to himself or others. Had defendant both braked and turned out for the tractor, the obvious and normal thing to have done, even less chance of mishap would have existed. It is thus well within the ambit of reason that the jury might believe defendant had ample opportunity to avoid the collision after he should have seen plaintiff's peril and realized that he was helpless to escape.

A rule has been expressed in a case where two automobiles collided that the doctrine of last clear chance "is of limited application in the case of two moving vehicles." [11] We appreciate that application of the doctrine in a case where both vehicles were moving and rapidly changing positions with respect to one another is fraught with difficulties. There is the unlikelihood that one driver would have a clear chance to observe the inability of the other to avoid a collision and still have time and opportunity thereafter to avoid it himself. We therefore do not believe that the extension of the application of the doctrine in such situations should be encouraged. But the reason for the limitation of the doctrine as just discussed is much less cogent where one vehicle was moving very slowly as here. In that respect this case is closely analogous to Morby v. Rogers,[12] where an automobile struck a bicycle rider. Mr. Justice Wolfe pointed out in a concurring opinion that "It was not a case of a rapid change of relative positions of two fast moving vehicles. The cycling boy was riding a *comparatively slow-moving vehicle.* This circumstance

11. Hickok v. Skinner, 113 Utah 1, 8, 190 P.2d 514, 517.

12. Morby v. Rogers, supra, Utah, 252 P.2d 231, 239.

alone may give rise to a situation where it is incumbent on the jury to determine in respect to that vehicle whether the comparatively more rapid one had the clear opportunity to avoid the accident or mitigate it into a possible minor collision." The present case, though concerned with two moving vehicles, concerns a rapid moving, relatively maneuverable truck and a slow moving, cumbersome tractor which practically speaking was in the same situation as if stopped. The truck covered several hundred feet while the tractor was moving but a few feet.

Whatever the true facts of the case, the evidence viewed in the light most favorable to the plaintiff could justify reasonable men in concluding that plaintiff was in inextricable peril, that defendant had sufficient reason to realize this fact and that defendant thereafter clearly had opportunity to avoid the collision—the elements necessary for the application of the last clear chance doctrine. Therefore the trial court erred in refusing to comply with its request to submit the case to the jury on that theory.

Other points raised by appellant are deemed to be without merit.

The case is remanded with directions to grant a new trial. Costs to plaintiff.

McDONOUGH, C. J., and WADE, J., concur.

HENRIOD, Justice (dissenting).

I dissent. I believe that most of the argument of the main opinion touches the *primary negligence* of the litigants rather than that involved in a last clear chance situation. Further, it is suggested that the opinion assumes an inextricable peril that exists, if at all, in the arguments of the main opinion, and a *clear* chance that is not reflected in the record,—but one, rather, that is predicated on conjecture based on split-second time factors, distances theorized in terms almost of inches, and upon the dangerous suggestion that defendant could have avoided the injury *if he had driven on the wrong side of the highway.* In my opinion such assumptions and suggestions do not lend themselves to the invocation of a doctrine bottomed on *exclusion of guesswork, assumption, conjecture, doubt or anything short of reasonably uncontroverted facts,* or a situation that is "free from confusion, uncertainty or doubt" as the New Century Dictionary puts it, —so free from doubt, I would say, as to be clear beyond a reasonable doubt. If this be not so, the word "clear" must connote something less than "clear," such as "likely" or "probable."

This court has assumed that the matter of submitting the last clear chance theory to the jury is determinable by the trial court.[1] I take it, then, that the trial court's conclusion in this respect lightly should not be challenged, and it is submitted that the facts recounted in the main opinion do

1. Cox v. Thompson, Utah, 254 P.2d 1047.

not make unreasonable, arbitrary or capricious, as we say it must be, the action of the trial court in this case of refusing to instruct as to last clear chance.

The main opinion generalizes, correctly, that here the evidence should be canvassed in a light most favorable to plaintiff. Such rule, of course, requires no one to believe the incredible, such as testimony that might have been given that the defendant was going 150 m. p. h. Although such evidence is not present here, some of it does approach a type of testamentary fantasy which, in my opinion, is quite unworthy of belief, such as plaintiff's testimony that defendant was traveling about 45 m. p. h. as observed by plaintiff from a distance of 325 feet from a position in front of the oncoming vehicle.

The main opinion cites a number of cases to support its conclusion, none of which, I venture, is in point. Davies v. Mann, the landmark case involving a hobbled donkey injured and given to legal history when a team and wagon descended upon the beast at a smartish pace, is not analogous since there was neither a hobbling nor a dumb animal involved here.

Nor is Knutson v. Oregon Short Line R. Co., cited by the opinion, in point, since there a boy lay on the tracks, *unconscious* or *asleep*. To attribute either condition to the plaintiff in this case, is to claim a similarity not reflected in fact or fancy. Likewise, Teakle v. San Pedro, L. A. & S. L. R. Co. is no authority because of com-

plete dissimilarity of fact. There the injured person had been rendered helpless and could not escape, being under a moving train, whose fire-box finally came along and killed him. Here the plaintiff was free as a bird to jump from the tractor at any time after defendant was as far as 325 feet away.

Following these citations the opinion speaks of an extension of the rule, which is admitted to be "not our case," and then states that Sec. 479 of the Restatement is pertinent here, so that the lower court, viewing the facts in a light most favorable to plaintiff, was bound to instruct on the last clear chance, if reasonable men might conclude from the evidence that 3 conditions prevailed: (A) that plaintiff was in an inextricable danger, (B) that defendant *knew* or *should have known* of such danger had he exercised due care, and (C) that defendant *thereafter* could have avoided the injury if he had exercised reasonable care.

As to (A): The main opinion indulges in some guesswork when it suggests that 1) "jumping to either side presented plaintiff no assurance of safety" and that 2) "it would have been unreasonable considering the safety of others, including defendant himself, to expect plaintiff to jump off and abandon the moving tractor upon the public highway." These gratuities respectively are 1) a bit of unfounded conjecture and 2) something unsupported by the record, since there is no indication that others

were about, (such latter suggestion being inconsistent, it would seem, with the opinion's further statement that "the highway was completely free of other traffic"). The labor of the opinion seems accentuated when it is stated further that "due to the cumbersome nature of the tractor, *it seems clear* that reasonable minds could believe that *as soon as it*-(the tractor) *moved out into the lane of traffic* plaintiff was in danger *from oncoming vehicles, from which he could not extricate himself.*" This statement is made while another statement found in the opinion placed defendant 325 feet away at the time the tractor was moving into the lane of traffic. Such contention would make an average motorist, driving at a distance of 325 feet away from the tractor, at between 40 to 60 m. p. h., while watching traffic, an expert, without any foundation having been laid, as to the cumbersomeness of an 11½ foot tractor of unknown design, weight or manufacture, which appears suddenly from behind a dense growth of shrubbery. Such conclusion by the main opinion attributes to defendant an omniscience not shared by this writer or that average know-it-all, the mythical reasonable, prudent man. To say, —much more assume,—that one entering a highway on a tractor clearly could not seek safety from an approaching vehicle 325 or even 125 feet away travelling at about 45 m. p. h., the rate testified to by plaintiff, is to blind oneself to reality and the capabilities of the human. To say that one entering the highway on a tractor, un-

der the circumstances of this case, is in the same kind of inextricable peril, from which escape is impossible, as was the hobbled donkey, an unconscious boy on the railroad tracks, or an unfortunate victim imprisoned under a moving train, simply is to flout analogy, refuse to accept the obvious and to indulge in a conclusion unsupported by common experience, the record in this case, any authority cited by the main opinion, or discoverable by the writer, and to flee from the common experience of mankind.

Besides all this, the majority opinion indulges another inconsistency more difficult to reconcile, hardly justifiable under the last clear chance doctrine. The opinion contends that in the time during which plaintiff was in an inextricable peril from which he could not escape, (although plaintiff was seated on a tractor, free to move in any direction), the defendant *clearly* and easily could expend ¾ of a second of reaction time, apply his brakes and stop short of the place of impact while plaintiff could not accomplish the simple physical act of jumping off a tractor. Life just isn't that inconsistent.

As to (B): I respectfully venture that as to this condition required by the majority opinion, such opinion simply assumes the point it seeks to establish. As I understand it, the last clear chance doctrine has to do with the primary negligence of defendant, plaintiff's contributory negligence and the new or continued negligence of defendant without which there can be no last

*clear* chance, and without which no injury would have resulted. The main opinion seems to imply that plaintiff was in an inextricable peril from the time defendant was 325 feet from the point of impact to the time of impact, by discussing what defendant could have done at that point, but concedes that defendant may not have been burdened with knowledge, as a reasonable person, that a man on a tractor entering a highway 325 feet down the pike, was in an inextricable peril. After devoting considerable space to what defendant did before he was 125 feet away, the main opinion then seems to say that inextricability started at that point. If the inextricability started when defendant was 125 feet away, then so far as the last clear chance doctrine is concerned, only the facts occurring *after* the defendant was 125 feet away should be discussed, since they are the only ones that conceivably could be pertinent in this case where the jury found no cause of action.

The opinion assumes that defendant knew the tractor would not turn, that it would not increase or decrease speed, that it was going downhill (a fact apparent to no one traveling the highway) or that plaintiff would not react normally and jump, or would do or not do any of dozens of things. To assume such facts is to succumb to conjecture and adopt a principle which is the antithesis of that applicable to a last clear chance, where the facts must be so crystal clear in establishing an undebatable chance to avoid an injury as to be free from such suggestions that had plaintiff jumped, he may not have been assured of safety.

Having arrived at a determination of condition (A) by simple ipse dixit and of condition (B) by what I think is conjecture unfounded in fact or on the record, the main opinion makes the rather startling pronouncement that "The presence of conditions (A) and (B) *thus established,* there still remains (C)" ! Then follows a statement that the chance to avoid the injury *must be clear, not a bare possibility, such that a defendant cannot be charged with any precise procedure to avoid the injury, and such that an ordinary prudent person would have a real opportunity to see the danger, realize the inextricability and avoid the harm.* I believe that such statement pays homage to a principle, but has not been applied in this case where the facts do not lend themselves to the high quality of proof which the majority opinion says is necessary to establish a last clear chance.

I believe some cases have extended the last clear chance doctrine to an extreme that does violence to the meaning of the word "clear," and I wonder if we are not doing that here. I believe the doctrine means what it says,—a last *clear* chance to avoid injury, and if the doctrine be extended any further, it would not seem entirely foolish for someone to suggest that there might be a last chance after the last clear chance, where plaintiff could not recover because for a split-second, viewed

222

from hindsight, he was freed from his inextricable position, or, had he exercised the due care during that instant which we think he should have exercised, could have extricated himself from such peril.

WORTHEN, J., does not participate herein.