HYRUM SMITH ESTATE COMPANY, a
corporation, Appellant,

v.

Clinton William PETERSON,
Appellee.

No. 5001.

United States Court of Appeals
Tenth Circuit.

Nov. 2, 1955.

Glen E. Fuller, Salt Lake City, Utah, for appellant.

Richard W. Brann, Ogden, Utah, for appellee.

Before PHILLIPS, Chief Judge, HUXMAN, Circuit Judge, and SAVAGE, District Judge.

HUXMAN, Circuit Judge.

This was an action by Clinton William Peterson, the appellee, against Hyrum Smith Estate Company, a corporation, for damages for injuries which he suffered when, while riding a motorcycle, he collided with one of five horses upon the highway near the home occupied by Aaron Smith, Vice-President of the appellant corporation and the owner of approximately one-half of its corporate stock. The collision occurred when one of five horses that were in the ditch along the public highway suddenly started across the highway in front of appellee's motorcycle and he was unable to avoid striking the horse. Peterson suffered serious injuries as a result of the collision. A jury trial resulted in a verdict for plaintiff, upon which the judgment appealed was entered.

The four contentions urged for reversal are:

(1) There was insufficient evidence to establish ownership of the horses in the appellant corporation to take the case to the jury; (2) there was insufficient evidence of negligence on appellant's part in permitting the horses to be upon the highway, if its ownership of the horses was established, to take the case to the jury; (3) Appellee Peterson was guilty of contributory negligence contributing to his injuries; and (4) the court erred in refusing to give requested instructions 4 and 6.

We are of the view that there was sufficient evidence of ownership of the horses, including the black horse involved in the accident, to submit this question to the jury. Appellant owned or controlled the possession of seven horses on the date of the collision, among which was a team of black horses. Appellant admittedly owned and controlled four of the five horses on the highway at the time of the accident and among these horses was a team of black horses. Jack Thackery, a neighbor of Smith's, testified that he saw the horses at the time of the accident; that he had seen a similar black horse belonging to Smith; that both of these black horses appeared to be Smith's horses; that it was his conclusion at the time of the accident that the horses involved in the accident belonged to Smith; and that in talking to a third person about the accident he told him he thought this black horse that was struck belonged to Smith.

Smith's son at first testified that the black horse reminded him of "one of dad's horses, but when I got up there it also reminded me of a horse of a neighbor's which wasn't my dad's horse." When pressed as to whose horse he thought it was, he said it looked like a horse belonging to Jack Pence. Pence was not called as a witness and there is no evidence that he ever had such a horse.

Sheriff Stewart went to the home of Smith and informed him that one of his horses had been hurt. Smith and his son then went to the scene of the accident, opened a corner of the fence, and drove all five horses, including the injured one, onto appellant's land.[1]

Appellant's strongest contention is that there was insufficient evidence of negligence to submit that issue to the jury. Plaintiff relied both upon res ipsa loquitur and also on active negligence in attempting to make a case. The court did not, however, submit the doctrine of

---

1. While Smith denied that he assisted in driving the horses onto appellant's land or was present when they were returned, there is evidence which would support the conclusion that he was present and assisted in the operation.

res ipsa loquitur to the jury. Since no error is predicated upon a refusal to submit that issue to the jury, it need not be considered further herein.

■ Section 41–6–38, Utah Code Annotated 1953, provides:

"No person owning or controlling the possession of any livestock, shall wilfully or negligently permit any such livestock to stray upon or to remain unaccompanied by a person in charge or control thereof upon a public highway, both sides of which are adjoined by property which is separated from such highway by a fence, * * *; provided, that the foregoing provision shall not apply to range stock drifting into any such highway in going to or returning from their accustomed ranges. * * * In any civil action brought by the owner, driver or occupant of a motor vehicle or by their personal representatives or assignees, or by the owner of the livestock for damages caused by collision with any domestic animal or animals on a highway, there is no presumption that such collision was due to negligence on behalf of the owner or the person in possession of such livestock."

So far as we are advised, this section has never been construed by the Supreme Court of Utah. We, however, feel that the language of the statute providing that where a collision occurs between a motor vehicle and livestock drifting upon the highway "there is no presumption that such collision was due to negligence on behalf of the owner or the person in possession of such livestock" is clear and unambiguous and should be given the meaning naturally flowing therefrom. To us the language means, and in considering this question it will be held, that under Utah law there is no presumption that appellant was guilty in permitting the horses to be upon the highway under the conditions they were found there, and that the burden rested upon the plaintiff to establish acts of

negligence to entitle him to have his case submitted to the jury.

■ There is some confusion in the record with respect to the fences involved in this litigation. Appellant's grazing land consists of land along or near to the highway and land which runs back into the hills. The latter land is unfenced. Most of appellant's land along the highway is fenced. Smith testified that apparently the horses got onto the highway through an open gate. The ownership of that particular gate is not clear. Smith did testify that appellant "did have * * * gates up there in that area." He also testified that the gate through which the horses could have gotten onto the highway was along appellant's fence line; that a roadway led up through the gate; that appellant had used this gate. His final answer with respect to the use of the gate was, "We never use it to amount to anything, no." In response to the question, "Do you maintain the fence and gate in that general area?", his answer was "Yes, Sir." He further testified that "this gate leads directly onto your (appellant's) property;" that he checked the gate on the morning of June 19, 1953, the date of the accident, and that it was open; that he could not tell when the gate had been checked prior thereto but that the gates were checked about every ten days or two weeks.

The factual situation then is this. Here is a gate leading to appellant's grazing land, through which these horses could have escaped onto a main travelled highway, which gate appellant maintained and checked. It was open on the day these horses escaped onto the highway and it could have been open for as much as two weeks without being checked by appellant. Whether such supervision of a gate through which the horses could have escaped onto a main arterial highway was adequate to absolve appellant of negligence constituted an issue of fact which was properly submitted to the jury.

■ We think the question of appellee's contributory negligence also was

properly submitted to the jury. Appellant proceeds on the assumption that the exact distance the horse was away from appellee when he first saw it was 200 feet. From that it is argued that at the speed appellee was going, according to his own testimony, it would be impossible for the horse to jump onto the highway when appellant was about 100 feet away and dash into his path. Witness Thackery did not testify that the horse was 200 feet away at the crucial time. He testified it was "about 200 feet." We, of course, know that estimates of speed and distance when made upon the spur of the moment or when casually made are subject to great variance from the actual facts, especially when one is asked to give his estimate thereof at a subsequent time.[2] The further contention that Peterson admitted that he was not keeping a lookout and that he was looking elsewhere than down the road is not conclusively supported so as to establish as a matter of law that he was guilty of contributory negligence. The substance of his testimony was that as he travelled down the road he occasionally glanced across the country. He testified positively that he saw the horses and the jury was warranted, if it believed his testimony, in concluding that he saw them at a sufficient distance to have stopped, had he anticipated that they would suddenly dash across the road. The question of his contributory negligence, like the question of appellant's primary negligence, was properly submitted to the jury.

Finally, it is urged that the trial court erred in refusing to give appellant's requested instructions 4 and 6. However, appellant states in its brief at page 12, "Since appellant is standing on the proposition that there is no question to go to the jury, this matter is raised primarily to inform this court of law and authorities supporting appellant's contention appellee was negligent in running into the horse."

Assuming that appellant has not withdrawn its objections to the instructions, we are of the view that its requested instructions were not proper as they would, as drawn, give animals equal rights to the highway, contrary to the statute, supra, forbidding animals to be at large on the highway. An examination of the record leads us to conclude that the court fairly stated the issues and wrote correct instructions, defining negligence, contributory negligence, the duty resting upon the defendant, and the corresponding duty resting upon the plaintiff.

Affirmed.

---

**2.** Graham v. Johnson, 109 Utah 365, 172 P.2d 665; Bailey v. Slentz, 10 Cir., 189 F.2d 406; Whittington v. Mayberry, 10 Cir., 190 F.2d 703.