351 P.2d 952

Francis F. LUND et al., Plaintiffs and Respondents,

v.

PHILLIPS PETROLEUM COMPANY, Inc., Defendant and Appellant.

No. 9119.

Supreme Court of Utah.

May 3, 1960.

McKay & Burton, Salt Lake City, for appellant.

K. Samuel King, Salt Lake City, for respondents.

CROCKETT, Chief Justice.

The plaintiffs sued for damages to the paint on their automobiles alleged to have been caused by some deleterious substance in the smoke and soot emitted from a flare stack at defendant's oil refinery at Woods Cross, Utah. From adverse jury verdict and judgment entered thereon defendant appeals.

Defendant challenges the verdict and the propriety of submitting the case to the jury under the doctrine of res ipsa loquitur on these bases: that there is no proof that the soot came from its flare stack; nor that it was negligent in its operations; but that, on the contrary, its evidence showed so conclusively that it had exercised due care with respect thereto that the jury could not reasonably have found it negligent.

It is not to be questioned that if we place the emphasis on the defendant's point of view and survey the evidence in the light most favorable to its contentions, a very good case can be made to support them. However, such is not the method of review.[1] If the evidence and the inferenc-

[1] Rummell v. Bailey, 7 Utah 2d 137, 320 P.2d 653.

es that fairly may be drawn therefrom viewed in the light most favorable to the plaintiffs can reasonably be seen as providing a factual foundation which will support the application of the doctrine of res ipsa loquitur, the submission to the jury on that theory was justified, because the plaintiffs were entitled to have the case submitted upon their theory.[2]

The defendant's refinery just west of Woods Cross, Utah, consists of several refinery units. Near its South Plant is a flare stack about 45 feet high and six inches in diameter through which waste gases are exhausted and burned to dispose of them without damage to units in the refinery. Adjacent to and mostly to the east of this flare stack there is a parking lot where plaintiffs parked their cars. The happenings on the afternoon this damage occurred come primarily from Mrs. Donnell Gwynn, wife of one of the plaintiffs. She drove the family car to pick up her husband after work, arriving shortly after 4 p. m. After waiting a few minutes, she noticed the flame burning at the top of the pipe being blown to the east and saw a "smoke tail" at the end of the flame from which smoke and soot seemed to be coming. She admitted that she could not see the small particles of soot (slightly smaller than a match head) all the way back to the flare, but said that the flame, smoke and soot from the flare stack were blowing directly toward her; and that a film of soot appeared to be settling on the cars.

The evidence also was that the pattern upon which the soot settled on the cars seemed to point to the fact that it came from about the angle it would travel if carried by the breeze from the stack. The cars were parked at distances varying from 100 to 300 feet from it. Those to the west, which were thus upwind from it, received no soot and no damage, while those to the east did; and the cars closest to the flare stack received the most soot, especially on their tops, while those further away received somewhat less, with the greatest concentration on their sides nearest the stack, and a lesser amount on their far sides. There was additional evidence that there were no other sources in the area from which it could reasonably be found that this smoke and soot came.

When the soot was washed off the cars, it was found that the paint was "pitted" under these particles of soot. The judgment is for this damage to the paint on the cars of the 11 plaintiffs, which was stipulated to aggregate $1,140.30.

Defendant insists that the above evidence provides nothing more than conjecture that the soot came from its flare stack. It may be conceded that the evidence does

2. Morgan v. Bingham Stage Lines Co., 75 Utah 87, 105, 283 P. 160; see also Beckstrom v. Williams, 3 Utah 2d 210, 282 P. 2d 309.

not so prove as to exclude doubt. The law does not exact any such standard of proof; nor even that which a litigant seeking to avoid liability might demand. The standard of proof required is by a preponderance of the evidence, which is further defined as the greater weight of the evidence, or as is sometimes stated, such degree of proof that the greater probability of truth lies therein.[3] This, of course, does not mean that the evidence must be such that it would necessarily impel all reasonable minds to that conclusion, but only that some of them, acting fairly and rationally upon the evidence, could so conclude. The differences in natural endowments and experience are such that rational people vary in their approach to, and appraisal of, disputed issues and have honest differences of opinion as to the deductions to be drawn from the same evidence.

■ One of the chief merits of the jury system is that it brings together a group of persons representing a cross-section of the community and takes advantage of their differences in point of view and obtains the benefit of their composite judgment. It is obviously necessary to allow some latitude for the orbit within which reasonable minds may operate. To be sustainable in law the verdict need only fall within that orbit so that it can be said that there is substantial evidence from which reasonable minds could believe facts which will support it. Applying that principle here: even though the evidence was not such as to oblige the jury to find in accordance with the plaintiffs' claims, it seems hardly open to question that they could, within the limits of reason, have believed as they did: that the soot came from the defendant's stack.

Defendant next poses this argument: "Even if it be assumed that the smoke and soot came from its flare stack and that it caused the damage to the plaintiffs' automobiles, * * * What evidence is there of any negligence on its part? Absolutely none."

■■ This argument practically ignores the purpose of the doctrine of res ipsa loquitur, namely: to permit one who suffers injury from something under the control of another, which ordinarily would not cause injury except for the other's negligence, to present his grievance to a court or jury on the basis that an inference of negligence may reasonably be drawn from such facts; and cast the burden upon the other to make proof of what happened.[4] This inference of negligence remains in the case: it justifies its submission to the jury; and will sustain a finding of negligence, even though there be countervailing

---

3. Alvarado v. Tucker, 2 Utah 2d 16, 268 P.2d 986.

4. See Joseph v. W. H. Groves, Latter-Day Saints Hospital, 10 Utah 2d 94, 348 P.2d 935.

evidence, unless such adverse evidence so conclusively shows nonnegligence of the defendant that reasonable minds, acting fairly could not find it negligent. This forms the basis of the next proposition advanced by the defendant. And the inquiry is whether it so proved.

The defendant presented evidence bearing upon the care exercised in the operation of its plant and its flare stack. Its chemical engineer, James Kenney, and Dr. Sugihara, a professor of organic chemistry from the University of Utah, both stated: that the flare stack burned only waste gases; and that these gases contained no corrosive substances. Its evidence also was that other painted surfaces in the area had never been known to become "pitted" as the plaintiffs claim their automobiles were.

Plaintiffs rejoin that the defendant's position is vulnerable because of these facts: that its evidence covered only the operation of its units No. 1, No. 2, and No. 3 in its South Plant; that its operations superintendent, Mr. Yeates, admitted on cross-examination that its North Plant, which processed crude petroleum, was also using this flare stack on the date of the damage to the plaintiffs' cars; that Dr. Sugihara stated that there are innumerable chemicals in crude petroleum; and that this leaves open a basis for finding that some deleterious substance came from that stack. Supplementing this, testimony was introduced from two farmers, Mr. Winegar and Mr. Hatch, that during the prior year their crops adjacent to the defendant's North Plant were "burned" by a substance apparently from defendant's plant and that the defendant paid them for the damages caused thereby.

In considering whether the defendant's evidence shows so conclusively that it used due care that a finding of negligence could not be justified, it is to be borne in mind that its evidence is to be weighed in connection with all of the evidence in the case, and that it is the prerogative of the jury to judge the weight of the evidence and the credibility of the witnesses; and that in doing so they may take into consideration the interest of the witnesses in the result of the trial, and any reluctance they may have to reveal facts which may be contrary to such interest.

When a trial judge has submitted a cause to a jury and its verdict is under attack there are several important considerations to be weighed which relate to the fundamental right of the litigants to have a trial by jury, which is firmly ingrained in our law. The jury system is built upon what we believe to be a sound assumption: that a group of ordinary citizens, called in to adjudicate controversies between their fellow men, quite generally will take their responsibilities seriously; will act honestly and fairly; and that they are capable of doing practical justice. The fact that

the system has endured for so long and worked so satisfactorily supports the soundness of that assumption. We do not suggest that the jury is infallible nor that the court should abdicate its undoubted supervisory responsibility to see that justice is done by setting aside a verdict if it plainly appears that there has been a miscarriage of justice.[5] But this is done with reluctance and only when it is plainly apparent that the jury has abused its prerogatives by refusing to accept uncontroverted credible evidence or otherwise ignoring or misapplying proven facts or established law.[6] If the courts were ready to override jury verdicts whenever they disagreed with them, the right of trial by jury would be effectively abrogated and the trial may as well be to the court in the first place.

■ It is to serve the policy of safeguarding the right of trial by jury that in doubtful cases the doubts are resolved in favor of submitting the case to the jury; and in favor of supporting the verdict when rendered. For these reasons the court will interfere with the verdict only when it is so outside the limits of reason that it must be said that there is no substantial evidence to support it. We see no justification for such a conclusion here.

5. See Jensen v. Denver & R. G. R. Co., 44 Utah 100, 138 P. 1185.

Affirmed. Costs to plaintiffs (respondents).

WADE, McDONOUGH and CALLISTER, JJ., concur.

HENRIOD, J., concurs in result.

6. See Newton v. Oregon Short Line R. Co., 43 Utah 219, 134 P. 567; Stickle v. Union Pacific R. Co., 122 Utah 477, 251 P. 2d 867.